HENSLER, ADMR., APPELLEE, *v.* B. & O. R. R. Co.,
APPELLANT.

(No. CA-72-08-0059—Decided April 30, 1973.)

*Messrs. Millikin & Fitton, Mr. John G. Rosmarin* and
*Mr. Stanley D. Rullman* of counsel, for appellee.
*Messrs. Lindhorst & Dreidame* and *Mr. James L.
O'Connell* of counsel, for appellant.

PALMER, J. Plaintiff, the appellee herein, filed suit in
the Court of Common Pleas of Butler County, as admin-
istrator of the estate of decedent Mary Elizabeth Hensler,

for damages resulting from the collision of defendant-appellant's train with an automobile in which decedent was a passenger. The complaint alleged that the collision was the direct and proximate result of defendant's negligence in the operation of its train and in the maintenance of its tracks and right-of-way. The defendant's answer admitted the collision, but denied all other allegations of the complaint. In due course, a trial by jury was had and resulted in a general verdict for plaintiff in the aggregate amount of $9,500, upon which verdict a judgment was entered. This appeal is predicated upon the alleged error of the trial court in overruling defendant's motions for a directed verdict made at the conclusion of plaintiff's case and renewed at the close of all of the evidence, and upon the overruling of its motion for judgment notwithstanding the verdict or, alternately, for a new trial, and, finally, upon the trial court's rejection of two special charges offered by defendant.

The appeal presents a railroad crossing case in which the plaintiff's decedent, his two year old daughter, was a passenger in an automobile being operated by plaintiff's wife, the decedent's mother, in a westerly direction on Stahlheber Road, a public roadway in Butler County. The defendant's freight train was enroute from Indianapolis to Cincinnati proceeding south. The collision occurred at a crossing not far from the Hensler residence, and resulted in the death of both mother and daughter.

Two claims of negligence were asserted by plaintiff during the trial: first, that the train crew failed to sound the whistle or bell in accordance with law, and second, that the view at the crossing was obstructed by vegetation and brush in and along the railroad's right-of-way. Evidence, much of it in conflict, was offered by both sides as to both issues. This appeal is structured, in principal part, to test the sufficiency of such evidence as was offered by plaintiff to withstand defendant's motions for a directed verdict.

Defendant presents three assignments of error, the first of which is phrased by defendant as follows:

"In a railroad crossing case predicated exclusively

upon claims of failure to sound the whistle and obstructed view, it is error to overrule the defendant's motion for a directed verdict where the only evidence of failure to sound the whistle consists of the negative testimony of witnesses who were in-doors and three hundred or more feet from the crossing and who were not listening for the whistle and where there is no evidence that any obstruction on railroad property did, in fact, obstruct the view of the vehicle operator or the train crew."

The duty of the trial court in determining motions for a directed verdict is set forth in Civil Rule 50(A) (4), as follows:

"* * * Where a motion for a directed verdict has been properly made and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

We take it, therefore, that if, after construing the evidence most strongly in favor of the plaintiff, we find that reasonable minds *could* in fact differ upon the determinative issues of this case, then it follows that the trial court did not err in overruling defendant's motion for a directed verdict, and his first assignment of error should be overruled. Defendant, however, argues strongly that it has met the test of Civil Rule 50(A) (4) with respect to both specifications of negligence raised by plaintiff, viz., the failure to sound the whistle and the obstructed view.

On the first of these issues, defendant urges that "the only evidence of the failure to blow the whistle came from two witnesses whose testimony was purely negative and who were not in a position to hear the whistle and were not listening for it." The record reveals that the first of plaintiff's witnesses, Chloe Barger, lived in a house one hundred yards from the crossing where the collision occurred and that, on the day in question, she was sewing and ironing in her dining room, a room closest to the crossing. The following was elicited on direct examination:

"Q. Did a train—did it come to your attention that a train came down the tracks shortly after noon on January 20, 1971?

"A. Yes, it did. *I heard it rumbling along and then I heard it thump* and I looked up and saw it had stopped—out my kitchen window. And then I looked out the dining room window and I could see that something had happened and I didn't know exactly what * * *.

"Q. Mrs. Barger, will you tell the ladies and gentlemen of the jury whether or not you heard anything else from the train other than the rumbling of the train and some thumping sound?

"A. I didn't hear no whistle or no bells on that day." (Emphasis added.)

On cross-examination, the witness conceded that she was paying attention to her ironing, that the windows were closed and the furnace was on.

"Q. Now, you said you didn't hear any whistle or bells but isn't it a fair statement to say you don't know whether or not a whistle was sounded or a bell rung on the date that we have been talking about, the date of the Hensler accident?

"A. No, but I did hear it rumbling along and the thump.

"Q. But whether or not a whistle was sounded or a bell was rung, the honest answer is you don't know, isn't that a fair statement?

"A. I didn't hear it blow * * * No, I don't know.

"Q. Your answer is you don't know one way or the other, do you?

"A. No, but I think I would have heard it."

The second witness, Josi Whitaker, who also lived one hundred yards away from the crossing, testified similarly:

"Q. Would you tell the ladies and gentlemen of the jury what, if anything, you heard or observed about this train.

"A. I believe I heard the train stop—when it was stopping and I looked out to see if my son was returning home and I saw the train stop.

"Q. Would you tell us if you heard any other signals?

"A. No, sir, I did not.

"Q. Have you in the past heard a whistle and bell as trains approached this crossing, Mrs. Whitaker, at your home?

"A. Yes, sir, I have."

On cross-examination, the witness stated that she had not been specifically listening for the train, and "guessed" she had been concentrating a little on ironing or the television or both.

"Q. And isn't it a fair statement to say that the whistle might have been blown and you just didn't hear it, isn't that true?

"A. I didn't hear it."

Defendant's witnesses, consisting of the train crew, all testified (except one whose testimony was ambiguous) that the whistle was properly blown on the approach to the crossing.

The foregoing extracts have been set out at some length in order to evaluate defendant's argument, which would hold the above testimony to be valueless because it is "negative" and because the witnesses were not listening and/or were not in a position to hear. While recognizing that a number of cases cited by defendant characterize the type of testimony above as "negative," we do not feel that this characterization is either dispositive of the issue or particularly helpful. It is difficult to be "positive" when one is testifying about the *absence* of something. If the witnesses had said, "The whistle did not blow," this would be "positive," we assume; but if the next question were "How do you know?" the answer would have to be, "Because I didn't hear it," or negative testimony again. As one cannot prove a negative, one cannot be positive about the absence of something.

And, indeed, the law of Ohio does not disqualify such testimony, as defendant appears to argue. The rule is expressed in *Hicks* v. *Baltimore & Ohio Rd. Co.*, 160 Ohio St. 307, where the court said, at pages 309, 310:

"In a railroad crossing collision case, negative testimony is proper where it tends to prove that bells were not rung or whistles sounded. Such testimony may be by wit-

nesses who were near the crossing at the time of the accident and to the effect that they did not hear any bell or whistle. See *Hocking Valley Ry. Co.* v. *Wykle, Jr., a Minor,* 122 Ohio St. 391 * * *.

"However, such testimony to have any probative value must be by witnesses who were in a position to know or hear."

The only question, therefore, is whether plaintiff's witnesses "were in a position to know or hear." Examining the cases cited by counsel, we note *Strahm* v. *B. & O.,* 32 Ohio App. 2d 333, where the witness was in a vehicle two hundred feet from the accident and not consciously listening. A similar situation and a similar distance was presented in *Green* v. *Baltimore & Ohio R. R. Co.* (C. A. 6), 299 F. 2d 837, applying Ohio law. In both instances, the testimony was held competent and probative. Where the witness was one-half mile away from the accident, however, another matter was presented. *Hicks* v. *Baltimore & Ohio Rd. Co., supra.*

In this instance, however, it is unnecessary to decide at what point, between the permissible two hundred feet and the impermissible one-half mile, a witness may be presumed to be in a position to know or hear, since both witnesses in this case testified that they did, in fact, hear the train. One heard it "rumbling along" and then heard it "thump," and the other heard the train stop. Construing this testimony most strongly in favor of plaintiff, as we must, we find that the witnesses were in a position to know or hear, and that this testimony had some probative value requiring submission to the jury, where its weight and credibility would be then tested, on the issue of failure to sound the whistle.

The second point raised by defendant arises from the evidence with respect to the obstruction of view issue. Here, defendant makes several arguments to sustain his thesis that the trial court erred in overruling his motion for a directed verdict. First, the railroad argues, the evidence demonstrates that, from a distance of fifteen to twenty feet east of the crossing, the driver of an automobile would

have a totally unobstructed view of well over one thousand feet from the direction in which the train in question was proceeding. It cites *Detroit, Toledo & Ironton Rd. Co.* v. *Rohrs,* 114 Ohio St. 493, and succeeding cases, for the principle that a driver must look and listen for approaching trains at such time and place and in such manner as will make that listening and looking effective. This statement is undoubtedly a correct one, and would be appropriate to consider if this case involved a question of the rights and duties of the *operator* of the motor vehicle. It does *not* logically follow, as defendant argues, that where the rights of the non-driver are concerned, the question of claimed obstruction of view is from the point where, in the exercise of ordinary care, a *driver* is supposed to do the looking. The duty of the railroad toward the general public, including an infant passenger, is not necessarily identical with or measured by its duty to the driver of a motor vehicle.

Indeed, defendant appears to abandon this argument in its reply brief, where it is stated:

"Since the Hensler automobile was in a skid for the last 63-64 feet before reaching the crossing, it matters not what the obstruction to view may have been to Mrs. Hensler closer than that point. The obstruction issue, therefore, must be resolved on the question of whether there were obstructions to view *on the defendant's property* to a motorist approaching the crossing at a greater distance than the place where Mrs. Hensler began to skid."

We believe this to be a correct definition of the issue. Viewed from this perspective, a review of the record reveals credible and probative evidence from which a jury could conclude that obstructions in the form of trees, brush and shrubs existed at the time of the accident on defendant's right-of-way. This conclusion is not strenuously opposed by defendant who, rather, argues that because the evidence shows that there were also obstructions in the form of trees, brush and shrubs on property *not* belonging to the railroad, that the jury could not reasonably conclude

that it was the railroad's obstructions which were the proximate cause of the injury. Thus, defendant's reply brief, in its conclusion, states:

"In connection with the matter of the obstruction issue, once again we point out that the uncontrovertable physical evidence shows that, if there were any obstructions, these were certainly as much upon non-railroad property as upon the defendant's property. Furthermore, in order for any such obstruction to have had any influence on this accident, it would have to have been an obstruction to Mrs. Hensler's view when she was more than 63 or 64 feet from the crossing. *The photographs taken from that point clearly show that any obstructions to a driver approaching from that distance were easily on non-railroad property.*" (Emphasis ours.)

We cannot agree that defendant's conclusion, emphasized above, is the only conclusion to which reasonable minds could come. A careful study, among the many introduced into evidence, of the four photographs most critical to this issue (defendant's Exhibits 2, 17, 3 and 15 taken at distances of 100, 75 and 62 feet from the crossing) show the state of the vegetation between the Hensler automobile as it approached the point where the driver began to apply her brakes and the approaching train. The fence, or fence posts, which earlier testimony had placed as marking the boundary line of defendant's right-of-way, are visible in each of these photographs and reveal substantial brush west of such fence, on defendant's property, obscuring portions of the track. The physical location of these obstructions with reference to the fence line becomes even more apparent in the photographs introduced into evidence as defendant's Exhibits 6, 7, 8, 9 and 10, beginning at forty feet from the crossing and progressing in five-foot increments toward the crossing. It is true that the photographs, as well as some of the testimony, also reveal several trees and some shrubs and fence posts not on defendant's property, but we are unable to agree that such photographs, or other evidence in the record, are conclusive against plaintiff's contention that obstructions on defendant's prop-

erty were a proximate cause of the injury. This being the case, a jury question was presented.

Defendant urges the relevance of the rules in *Sobolovitz* v. *Lubric Oil Co.*, 107 Ohio St. 204, and *Gedra* v. *Dallmer Co.*, 153 Ohio St. 258. We do not, however, find them apposite to the facts in the instant appeal. In arguing the *Sobolovitz* rule, defendant's postulation of the impermissible second and third "inferences," viz., that the driver's view of the approaching train was obstructed by something on the railroad's right-of-way, and that the railroad was negligent in permitting such obstruction to remain, is not supported by the record. Since some credible evidence exists to support both propositions, the question of an inference does not arise. *McDougall* v. *Glenn Cartage Co.*, 169 Ohio St. 522. Similarly, *Gedra* v. *Dallmer Co.*, *supra*, requires the plaintiff, where the evidence furnishes a basis for a choice between different possibilities, to produce evidence which furnishes a reasonable basis for the choice sustaining his claim. 39 Ohio Jurisprudence 2d 782, Negligence, Sections 174, 175. Where, as here, the record contains evidence from which the jury could exclude the effectiveness of those causes for which the defendant is not legally responsible, and which contains evidence tending to indicate as a more reasonable probability, that the injury was proximately caused by the negligence of the defendant, the jury must be permitted to draw such conclusion.

For the foregoing reasons, we hold that the trial court did not err in overruling defendant's motions for a directed verdict as to either issue of negligence raised by the record. And while we agree with defendant that if plaintiff had failed in its burden as to either of such issues, defendant's motion for a new trial would have been well taken, such was not the case and no error may be predicated upon the trial court's action in overruling the motion for a new trial. Defendant's first assignment of error is, therefore, not well taken.

Defendant's second and third assignments of error relate to the trial court's refusal to make two special charges requested by defendant.

The record reveals that defendant made his request prior to final argument and that the trial court denied the two special charges which form the basis of its second and third assignments of error. The court then proceeded to charge the jury. At the conclusion of the charge, the record indicates a "conference at the bench," at the conclusion of which the court corrected a mathematical error in its charge, and gave an additional or corrective charge relating to plaintiff's duty to establish one or both acts of negligence by a preponderance of the evidence. The record is silent as to any objection by defendant to the omission of such rejected special charges, or the failure of the trial court properly to restate them in the context of his general charge, or otherwise. Civil Rule 51(A) provides in material part:

"No party may assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection * * *."

As is made clear in the Staff Note accompanying Civil Rule 51, the purpose of this significant departure from previous Ohio practice is to avoid the confusion and undue emphasis resulting from the former multiple instruction system, and the court is now afforded the opportunity to make a single comprehensive instruction in its own language following final arguments. Since the court is no longer required to give special charges in the exact language of counsel where the instruction is legally correct, but may incorporate all or part of it in its own words in the appropriate place in the general instructions, or omit it altogether if redundant, repetitive, or unnecessary, it is obvious that any claimed error in such charge must be brought to the court's attention in time to correct any such error, viz., prior to the retirement of the jury. Here, the record indicates that several matters *were* brought to the court's attention and corrective or supplemental charges were made by the court, but none of such matters related to the subject matter of defendant's second and third as-

signments of error, which must, therefore, under authority of Civil Rule 51(A), be overruled.

The judgment of the Court of Common Pleas of Butler County is affirmed.

*Judgment affirmed.*

HESS, P. J., and SHANNON, J., concur .