STRAHM, ADMRX., APPELLANT, *v.* B. & O. R. R. Co., APPELLEE.

(No. 1475—Decided January 14, 1972.)

*Messrs. Everett & Blair,* for appellant.
*Messrs. Cory, Boesel, Leonard & Witter* and *Messrs. Shumaker, Loop & Kendrick,* for appellee.

COLE, J. This is an action in negligence against the defendant, railroad, appellee herein, for wrongful death of plaintiff-appellant's decedent. Mr. Strahm was a truck

driver killed in a collision at the railroad crossing on Breese Road in the village of Fort Shawnee, Ohio, involving the truck which he was operating and a train operated by defendant. The collision occurred on October 12, 1964, at about 2:55 a. m., and Mr. Strahm died as a result of injuries sustained in the collision. The case was tried to a jury, and at the conclusion of the plaintiff's case the trial court sustained a motion for a directed verdict. It is this ruling which is essentially the basis for the appeal. The other error assigned and argued concerns a pretrial order prohibiting any reference to prior accidents at the grade crossing.

The second assignment of error concerning the order directing a verdict for the railroad is fundamental to the entire cause and will be considered first.

I. The order of the trial court granting the motion for a directed verdict is specifically predicated upon a finding by the trial court that reasonable minds could not differ upon the conclusion that from the evidence presented decedent was negligent and that his own negligence was the proximate cause of his injuries and death. The issue of the contributory negligence of the decedent-truck driver is therefore the primary and basic issue, and we shall be first concerned with it.

The action of the decedent-driver can only be established by the testimony of other witnesses. However, he cannot be presumed to have been negligent. In fact, the presumption is that both parties used due care and negligence of either party must be established by proof. In *Biery* v. *Pennsylvania Rd. Co.*, 156 Ohio St. 75, the second paragraph of the syllabus reads:

"Negligence is never presumed. In an action based on negligence, the presumption exists that each party was in the exercise of ordinary care and such presumption prevails until rebutted by evidence to the contrary."

We have, therefore, to start with the presumption that the decedent driver exercised ordinary care. What, specifically, does such a presumption contemplate in the present circumstances?

In the recent case of *North* v. *Pennsylvania Rd. Co.*,

9 Ohio St. 2d 169 and the later case of *Zuments* v. *B. & O. Rd. Co.*, 27 Ohio St. 2d 71, the Supreme Court reiterated the care required as a matter of law of one approaching a railroad crossing. In the *Zuments* case, at page 72, the court stated:

"The driver of a motor vehicle about to pass over a railroad grade crossing on a public highway is required both to look and listen for approaching trains, and the looking and listening must be at such time and place and in such manner as to be effective for that purpose."

Thus, it is initially presumed that the decedent driver was exercising due care and, specifically, in the absence of evidence to the contrary, looked and listened for an approaching train as he neared the actual crossing and did so in such a manner that would be effective to warn him of an approaching train.

The narrower issue then presented is whether or not there was evidence to the contrary which would cause the presumption to disappear.

In many cases there is, of course, direct testimony of a witness either in an automobile driven by the decedent or standing nearby and watching that, in fact, the decedent did not look either way. *Ballmer, Admx.,* v. *Pennsylvania Rd. Co.*, 59 Ohio App. 221; *Cleveland, Cincinnati, Chicago & St. Louis Rd. Co.* v. *Lee, Admr.*, 111 Ohio St. 391. Such undisputed testimony directly rebuts the presumption. However, in many cases no such witnesses are available and there is only an inference that such action was not taken. The mere fact of the collision would not establish this inference, but combined with other evidence showing the existence of facts constituting a warning of a train's approach, the plaintiff may well be faced with the following dilemma:

(a) If he looked or listened he would have clearly seen or heard a train approaching but went forward anyway, thus failing to exercise due care, or (b) if he did not look, he failed to exercise the care required of a driver approaching a crossing.

Since in either event there would be a lack of due care, the presumption would be inferentially rebutted and, hence, disappear.

The Supreme Court in the *Zuments* case, *supra*, stated further, with regard to the exercise of due care, at page 72:

" * * * Where the uncontrovertible physical facts demonstrate that plaintiff's decedent did not do so, then such failure on his part was a proximate cause of the collision as a matter of law."

The "uncontrovertible physical facts" that give rise to this inference and its inherent dilemma then pose the specific question: What facts demonstrate failure to use care? It cannot be the simple fact a collision took place or a driver would be guilty of negligence in every crossing case and such is not the law.

There must be, in addition, some facts showing that there existed either a visual or audible warning of an approaching train or both, something to give knowledge of the existence of a train to the driver which, had he looked or listened, would have been seen or heard. Since we cannot know directly what was seen, we deal with what should have been seen.

In the instant case, there is testimony from a driver immediately following the decedent's truck that he heard neither whistle nor bell. The evidence has some probative force that none was in fact sounded and, hence, there is eliminated from consideration at this point (since all inferences on a directed verdict are in plaintiff's favor) the possibility of any audible signal as to the approach of a train traveling 75 miles per hour. (See *Diebley* v. *N. Y., C. & St. L. Rd. Co.*, 108 Ohio App. 381.) Consequently, there is here no incontrovertible physical fact rebutting the presumption that the decedent driver listened at a time and place where listening would have been effective. Had he listened, in other words, he would have heard nothing.

We then come to the problem of whether there was visual knowledge of an approaching train. The question becomes: if the decedent-driver looked at an appropriate time and place, were the incontrovertible physical facts such that he must have been warned as to the existence of that approaching train. This is the specific area where the

present case presents its fundamental issue, for the plaintiff contends that had he looked, the decedent would have seen a deceptive situation which effectively concealed from him knowledge of the train's existence and that on the basis of what he, in fact, must have seen he was a reasonably prudent man exercising ordinary care in proceeding. The defendant, on the contrary, contends that, as a matter of law, the incontrovertible physical facts impale the plaintiff on the horns of the dilemma set forth above and, hence, the action of the trial court in directing a verdict should be sustained.

The application of the rule as to incontrovertible physical facts in daytime crossing accidents is not difficult of application. A locomotive is a large and eminently visible object and, even when proceeding at a high rate of speed, can normally be seen, if, being within collision distance, one looks with an unobstructed view of the tracks. Where obstructions block the view, that fact can be seen and such governs the care which a driver should use. He would be warned that he could see but a short distance. However, at night the situation is changed. The sole visual signal as a train approaches in darkness is usually its headlight, and often obstacles to vision are concealed by the darkness. Thus, the situation invokes different possibilities, and we, here, are dealing with an accident occurring at night and in darkness.

Of course, the warning and knowledge given by the headlight of the engine are often determinative in nighttime cases. Thus, in *Patton* v. *Pennsylvania Rd. Co.*, 136 Ohio St. 159, a collision occurred at 6 a. m., on a November 6th and, presumably, in darkness. However, the court stated if the decedent-driver had looked "he must have seen the headlight of the approaching train and he is chargeable with having seen what could have been seen."

The problem here, however, is that the headlight, due to the speed of the train, was a considerable distance down the tracks when the decedent-driver, from a point of safety could have observed it, and due to the terrain and surroundings, was a dim light in the midst of other lights moving

and stationary. It is the plaintiff's contention that the scene presented would mislead a reasonable man to believe no train was in fact approaching and lead him mistakenly but not negligently to proceed onto the tracks. It is necessary to review the evidence most favorable to this contention, making the inference most favorable to plaintiff, to determine this specific issue.

In *N. Y., C. & St. Louis R. R.* v. *Kistler*, 66 Ohio St. 326, it is said, in paragraph 5 of the syllabus:

"The looking required before going upon a crossing, should usually be just before going upon the track, or so near thereto as to enable the person to get across before a train within the range of his view of the track, going at the usual rate of speed of fast trains, would reach such crossing."

In the instant case, the evidence indicates that when the decedent-driver was about 100 feet from the crossing he applied his brakes. The testimony further indicates that at this point he could have stopped within fifty feet. He was, therefore, at a point of safety and slowing with ample space ahead to provide a zone of safety.

If he had then at this point in time looked to the south, as we must presume he did, what did he see?

The answer to this question reveals the ultimate issue herein involved. The testimony of the driver-witness who was driving a truck some 200 feet behind that driven by the decedent indicates that a second or so after he saw decedent's brake lights come on at 100 feet from the tracks he looked to his right. At this point decedent-driver in his zone of safety, it may be inferred, would see approximately the same scene.

The evidence indicates that the night was dark, that the tracks were nearly parallel to a major interstate highway with heavy traffic, that there were also some visible yard lights to the right and some distance away. There was no automatic warning gate or signal but a continuously flashing signal. The driver in the following truck testified that he saw among other lights a light which he subsequently identified as a train light 1,600-1,700 feet to the south, but he said: "When I first saw it I thought maybe

it was a car on the interstate." He did not realize it was the headlight of a locomotive until about 6 seconds later when the light appeared to be about 1000-1200 feet away. His angle of vision would reveal more readily the movement of the light than would the angle of one closer to the tracks who would be almost looking directly at the light since the tracks angled somewhat to the west at this point.

The evidence as to the physical scene showed that these tracks, south of the intersection, also dipped at about 1700 feet from the crossing about six feet, thus lowering the apparent height of a train light. .The witness testified that the light was dim and steady and seemed about 4 or 5 feet above the ground.

It may thus be concluded that a reasonable interpretation of the evidence with all inference favorable to the plaintiff would indicate that the decedent-driver saw a dim and steady light, with its apparent movement quite limited by the angle of vision, against a foreground of a flashing light and a background darkness punctuated by other lights, some steady and some moving along the nearly parallel and adjacent interstate highway. Because the change in brightness and size of a light aproaching directly down the line of vision and 1700 to 1000 feet away would be small, there would be little if anything to distinguish it from the other lights dotting the scene.

If this then was what the decedent-driver saw when he looked as he approached the tracks, could he be said as a matter of law to have proceeded negligently? The presence alone of the locomotive was *not* conclusive evidence of its existence and speed. It gave no audible signal. Was the light under the circumstances set forth above sufficient notice or warning of its presence?

Two alternatives would appear to exist:

(a) Either the scene was ambiguous and presented a question as to the meaning of the lights which might have been either lights from a train or lights from a vehicle on the highway, or (b) the scene was so deceptive that a reasonable and prudent man on looking would have concluded there were only vehicle lights and no train lights.

In the first alternative (ambiguity), it would seem that

since a question existed, a prudent driver would have paused sufficiently to resolve the ambiguity. On the other hand, if the scene was as deceptive as described, a prudent man would have concluded that there was no train and proceeded, and there would have been no negligence, but only a mistake, not tinged with lack of care.

We are, as the trial court should have been, bound to make, from the evidence, every inference most favorable to the plaintiff. Here, then, the most favorable inference from the evidence presented would be that contained in (b) above; i. e., that the scene was sufficiently deceptive to mislead a reasonable and prudent man into believing no train was approaching and that he could, therefore, in the exercise of due care, proceed. The original presumption that the decedent-driver looked and listened from a position of safety is not then rebutted.

This was, essentially, the conclusion of the Supreme Court in the case of *Biery* v. *Pennsylvania Rd. Co.*, 156 Ohio St. 75, where the court, concluded that the evidence indicated a "confusing and hazardous condition at the time in issue" and determined that under such circumstances it could not be determined as a matter of law that the decedent-driver was negligent.

Adopting the inference most favorable to the plaintiff here, the facts indicate a deceptive situation because of the lights on the nearby highway. A locomotive light in these circumstances, in the absence of an audible signal, could well fail to give an adequate warning to one about to cross railroad tracks; therefore, it cannot be reasonably argued that a warning was ignored and a presumption of due care refuted.

It is true the decedent-driver is charged with looking and, also, with having seen that which was then apparent. But, if that which he saw was so deceptive that it gave no hint of danger or of the presence of a train, then, he could still be held to have been prudent and in the exercise of due care in proceeding. The plaintiff has presented facts from which the existence of just such a deceptive situation may be inferred.

The driver of the truck following did not identify the light as a train light until it was about 1000 feet away. In short, it did not become differentiated from the other lights until nearly 6 seconds had passed. By this time, the decedent-driver, slowing from 15 to 5 miles per hour, would have traveled, at an average speed of 10 miles per hour (or about 15 feet per second), 90 feet out of the position of safety at which he may have reasonably concluded there was no danger, to a point of no return on the tracks.

There is, therefore, a jury question as to contributory negligence. Is there evidence of negligence sufficient to present the case to the jury? We conclude there is.

A. There is testimony by a witness in a position to hear that he heard no bell or whistle. There was no other evidence positive or negative on this point. In *Diebley* v. *N. Y., C. & St. L. Rd. Co.*, *supra*, this court said, at 388:

"In our opinion testimony of a witness that he did not hear a whistle signal, even when not consciously listening, but when the witness was in a reasonable position to hear same, if given, is evidence of some probative value that the whistle signal was not given * * *."

The witness here was in a reasonable position to hear a bell or whistle and heard neither. There is, therefore, probative evidence that neither were in fact sounded and such presented a question for the jury as to defendant's failure to comply with the provisions of R. C. 4955.32.

B. The defendant's train was traveling at 75 miles per hour, according to the evidence presented by plaintiff. There was evidence that the accident scene was in a built up area. There was also evidence this speed was a violation of a safety rule of the railroad calling for a speed of not more than 25 m. p. h. at this point.

Defendant railroad asserts it was bound to no specific speed by statute or by ordinance and that the safety rule was solely for the protection of the railroad personnel who had been concerned with the likelihood of hitting trucks filled with inflammable liquids.

As to this latter argument, we must reject it. A collision involves two objects and to say that a safety rule

directed to minimizing the chance of such collision is solely for the protection of one of the participating objects is untenable. The rule involved the elimination of the collision and had as its objective and necessary result the welfare of all participating objects or persons.

However, the question is whether or not, in the absence of specific statutory limitation, a jury issue was presented by the evidence as to the question of speed constituting negligence. Although a particular speed does not become negligence per se, the operation of the train at a rate of speed unreasonable and excessive under the specific conditions existing here may constitute negligence. *N. Y., C. & St. Louis R. R.* v. *Kistler, supra,* and *Stugard* v. *P. C. C. & St. L. Ry. Co.*, 92 Ohio St. 318.

In *Ratcliff* v. *B. & O. Rd. Co.*, 109 Ohio App. 177, the Court of Appeals for Miami County said in paragraph 1 of the syllabus:

"The rule regarding operation of a railroad train in open country is not applicable where the portion of the railroad involved, although outside the limits of a municipal corporation, is in a built-up area and considerable vehicular traffic uses a crossing over the railroad in such area; the speed of a train in such area must be commensurate with the duty to exercise ordinary care to prevent injuries to those using the crossing."

Thus, there was upon defendant-railroad a duty to use ordinary care under the circumstances. The circumstances in evidence showed that Breese Road was a heavily traveled road used as an entry to Interstate 75; that this was a built up area; that its condition required heavy vehicles to move slowly across it; and that, by virtue of past events, a safety rule providing a speed for trains of 25 miles per hour existed for this area. There were view obstructions and an upgrade approached the crossing. Further, at night, lights from the highway nearby could create ambiguities as to the approach of a train. It appears, therefore, that the determination of what, under these circumstances, would constitute a reasonable speed would be a jury question.

In *Fannin* v. *Baltimore & Ohio Rd. Co.*, 15 Ohio Op. 2d 353, the U. S. Sixth Circuit Court had occasion to consider a case involving a railroad safety rule as to speed, for there "the freight train was being operated at a speed approximately double that of the limitation of the carrier's own rule" (page 356); this was one of the surrounding circumstances which required a submission to the jury of the question of negligence.

We would conclude that, construing the evidence most favorable to the plaintiff, there was evidence of negligence requiring submission of the cause to the jury, there being no other problem.

II. A second assignment of error concerns the ruling of the trial court prior to trial, denying to plaintiff the right to make any reference to prior or subsequent accidents at the crossing concerned in the lawsuit. On Page 4 of the transcript it appears that after the trial court had allowed a motion to this effect the following took place:

"Mr. Blair: We ask the court to modify this order subject to reconsideration on motion by plaintiff.

"The Court: Which will be allowed."

It does not appear any motion for reconsideration was ever made; hence, the order of the court was in effect not subject to any objection. The assignment of error is not well taken.

*Judgment reversed.*

GUERNSEY, J., concurs.
YOUNGER, P. J., dissents.