BARGER, Appellant,

v.

**CHESAPEAKE AND OHIO RAILWAY COMPANY, Appellee, et al.**

[Cite as *Barger v. Chesapeake & Ohio Ry. Co.* (1990), 70 Ohio App.3d 307.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–402.

Decided Nov. 15, 1990.

*Isaac, Brant, Ledman & Becker, J. Stephen Teetor, David H. Meade* and *Douglas J. Suter,* for appellant.

*Porter, Wright, Morris & Arthur, Patrick J. Smith* and *James D. Curphey,* for appellee.

McCormac, Judge.

Plaintiff-appellant, Larry Barger, appeals from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Chesapeake & Ohio Railway Company, and raises the following assignments of error:

"I. The trial court erred in granting summary judgment in favor of appellee since numerous material issues existed.

"A. Summary judgment may not usurp a party's right to trial where conflicting material facts exist.

"B. Negligence, proximate cause, discernibility, audibility of the train, unreliability of appellee's flasher system, and need of gates at the crossing are jury questions.

"C. The comparative negligence of the parties is a jury question.

"II. The trial court erred in weighing the negligence of the parties and finding, as a matter of law, that appellant's negligence was the sole cause or exceeded that of appellee.

"III. The trial court erred in ruling that federal law preempts well-established state common law with respect to railroad crossing crashes.

"A. Courts have squarely rejected the proposition that federal railroad or highway safety laws preempt common law negligence claims based upon the inadequacy of warning devices at crossing or discernibility issues.

"B. Appellee's duty to Larry Barger began well before any claimed federal action occurred.

"C. Federal railroad laws do not prevent states from adopting stricter safety standards to deal with local safety hazards.

"D. Congress has not preempted state law regarding inspection, maintenance, and testing of signal systems and devices."

This litigation arose as the result of a collision between an automobile driven by appellant and a freight train operated by employees of appellee. On

the evening of October 18, 1984, at approximately 9:00 p.m., appellant was traveling westbound on Kinnear Road in the city of Columbus.

At a point just west of State Route 315, Kinnear Road bisects the appellee's railroad tracks at nearly a ninety-degree angle. The crossing is comprised of three sets of tracks; two main lines, one northbound and one southbound, and an industrial spur.

As appellant approached the crossing, he momentarily stopped at the flashing warning lights and then proceeded to the first set of tracks where he stopped again. Appellant, at that point, was in a zone of safety since the approaching train was using the second, or southbound, set of tracks. However, he did not maintain his position but continued slowly westbound until he encroached upon the second set of tracks on which the train was approaching. An eyewitness to the accident testified that, at this point, he saw appellant's brake lights and reverse lights come on and, before appellant could get out of the way, observed the collision. Appellant has no recollection of his encounter with the locomotive.

■ A determination of appellant's third assignment of error will narrow the issues presented and, therefore, will be discussed first. By this assignment of error, appellant contends that the trial court erred by concluding that federal law has preempted Ohio law with respect to railroad crossing warning devices.

■ Congress has the power to preempt state law under the authority of the Supremacy Clause of Article VI of the Constitution. The Supreme Court has delineated basically three ways by which a federal law may preempt corresponding state laws. Congress may do so by explicitly stating that its enactment of federal legislation is meant to preempt state law. *Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490. If the legislation does not expressly mention preemption, the legislation may manifest an intent to occupy the entire field of regulation thereby leaving no room for concurrent state regulation. *Fidelity Federal Savings & Loan Assn. v. De La Cuesta* (1982), 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664. Lastly, if congressional legislation has not totally replaced state regulation, it may do so to the extent that state and federal regulations conflict. A conflict arises when compliance with both state and federal schemes is impossible. *Florida Lime & Avocado Growers, Inc. v. Paul* (1963), 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248. Stated differently, a conflict arises when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz* (1941), 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587.

Section 434, Title 45, U.S. Code provides:

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."

Thus, the Congress expressly vested the Secretary of Transportation with the authority to preempt state law by enacting regulations controlling railway safety.

The issue of railway safety is also addressed in the Highway Safety Act of 1966. Sections 401 to 404, Title 23, U.S. Code. The Act requires the secretary to develop uniform standards for highway safety. Pursuant to this mandate, the secretary, through the federal highway administration, adopted the Manual on Uniform Traffic Control Devices for Streets and Highways ("MUTCD"). See Section 655.601, Title 23, C.F.R. The MUTCD, adopted pursuant to federal regulation, provides that the type of crossing warning devices required are to be determined by the local agency having jurisdictional control. Therefore, federal authority to regulate grade crossings on highways receiving federal funds has been delegated to local agencies. See *Marshall v. Burlington Northern, Inc.* (C.A.9, 1983), 720 F.2d 1149.

Thus, Congress has expressly preempted state law governing railroad crossings once the state agency in charge has made a determination, under the applicable manual of traffic control devices, to upgrade a crossing. The local agency having jurisdiction over the Kinnear Road crossing is the Ohio Department of Transportation and, specifically, the Bureau of External Contracts. Charles R. Tripp, the Administrator of the Ohio Bureau of External Contracts, testified by deposition that the Kinnear Road crossing had been targeted for warning upgrade during the fiscal year 1984, *i.e.*, October 1, 1983 through September 30, 1984. Tripp identified a letter, sent over his signature, dated July 13, 1984, informing appellee that the Ohio Department of Transportation had scheduled a grade crossing modernization program for the Kinnear Road crossing. He further testified that the actual decision to upgrade would have been made thirty to sixty days prior to the mailing of the letter.

Therefore, the local agency responsible for implementing the federal grade crossing program had made a determination to upgrade prior to the October 18, 1984 collision involving appellant. Pursuant to the terms of Section 433, Title 45, U.S. Code and regulations adopted under the authority of the Highway Safety Act, a federal decision was made by an authorized local agency which invoked the doctrine of preemption and made the issue of warning devices a matter of federal legislation.

Once Ohio law has been preempted, the duty to install warning devices was no longer vested with the railroad and any negligence action predicated upon the failure to install crossing gates could not be maintained against appellee herein. See MUTCD, Part VIII.

Appellant's third assignment of error is overruled.

Appellant's first and second assignments of error are interrelated and will be discussed together. Appellant argues that there were factual issues presented which precluded the trial court's grant of summary judgment. Appellant maintains that sufficient evidence was presented to permit a jury determination of the discernibility of the train, whether the train's horn and bell were activated, and the issue of contributory negligence.

Summary judgment is a procedural device which may be granted only when, construing the evidence most strongly in favor of the non-moving party, reasonable minds could come to but one conclusion, adverse to the party opposing the motion. Civ.R. 56(C); *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615. The evidence must show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.*

 Prior to our discussion, a review of the evidence presented to the trial court is in order. For obvious reasons, appellant remembers nothing of the actual collision, but stated that he was familiar with the crossing, traveling it from east to west an average of four or five times per week prior to the incident. Appellant also submitted the statement and deposition of Robert Roller, who was in a car immediately behind appellant at the time of the collision. Roller stated that he saw appellant's car either stop, or almost stop, at the flashing lights, then proceed to the first set of tracks, stopping again, and finally proceed to a point just over the second set of tracks. He then heard a train whistle, saw the train, and observed appellant's backing lights come on just as the impact occurred. Roller also testified that he did not hear the train's whistle or see the locomotive until it was twenty to thirty yards from appellant's car. Appellant also submitted the affidavit of Kate Albers and Laurie Harp, who claimed that the flashers often operated when no train was coming. Harp claimed that she had several close encounters and Albers

stated that she was involved in a collision at the crossing. Both stated that they did not always hear train whistles or see approaching trains when they were at the crossing.

Appellee introduced the deposition of John Voit, the fireman who was operating the engine involved in the collision. Voit testified that his train was empty, he was traveling at about twenty-five to thirty miles per hour with his headlight on and was proceeding on an approach aspect. (An "approach aspect" is a signal indicating to the train crew that they should be prepared to stop at the next block signal.) Voit testified that he activated his bell at the appropriate time and that he blew his whistle according to standard procedures, beginning at a point approximately fifteen hundred feet from the crossing. He saw appellant's vehicle proceed in substantially the same manner as Roller had testified. Voit saw that appellant might proceed across the train's path and, therefore, gave several short blasts of his whistle approximately four to five hundred feet from the crossing. Appellee also submitted affidavits from three persons who either lived or worked near the crossing. Each affiant stated that he heard a whistle blow intermittently for a period of at least fifteen seconds. The affidavit and report of Thomas H. Rockwell, Ph.D., was also submitted by appellee as expert testimony. Rockwell stated, based upon his investigation, that it was his opinion that the train was discernible within a reasonable degree of scientific certainty. Other evidence was offered by both parties but is not of significance to our decision.

▇ We begin our discussion with the proposition that both a motorist and a train owe each other a duty of care to avoid collisions. The train's duty of ordinary care was defined by the Supreme Court in *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. The motorist's duty has been codified in R.C. 4511.62, which provides, in pertinent part:

"(A) Whenever any person driving a vehicle or trackless trolley approaches a railroad grade crossing under any of the circumstances stated in this section, he shall stop within fifty feet but not less than fifteen feet from the nearest rail of the railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

"(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train[.]"

In *Zuments v. Baltimore & Ohio Rd. Co.* (1971), 27 Ohio St.2d 71, 72, 56 O.O.2d 40, 271 N.E.2d 813, 814, the Supreme Court elaborated on a motorist's duty when a railroad crossing is approached and stated:

"The driver of a motor vehicle about to pass over a railroad grade crossing on a public highway is required both to look and to listen for approaching trains, and the looking and listening must be at such time and place and in such manner as to be effective for that purpose. Where the uncontrovertible physical facts demonstrate that plaintiff's decedent did not so do, then such failure on his part was a proximate cause of the collision as a matter of law. * * * *"

 The evidence indicates beyond doubt that appellant did violate R.C. 4511.62 and was, therefore, negligent *per se.* As pointed out in *Detroit, Toledo & Ironton Rd. Co. v. Rohrs* (1926), 114 Ohio St. 493, 151 N.E. 714, cited with approval in *McDonald v. Ford Motor Co.* (1975), 42 Ohio St.2d 8, at 12, 71 O.O.2d 4, at 6, 326 N.E.2d 252, at 254:

" * * * Where a witness testifies that he looked and listened at a railroad crossing, but neither saw nor heard a train approaching, and the only reasonable conclusion upon the evidence is that there is no doubt that had he looked he must have seen the train, the witness's testimony cannot be considered credible. *Detroit, Toledo & Ironton Rd. Co. v. Rohrs* (1926), 114 Ohio St. 493 [151 N.E. 714]. See, also, *Zuments v. B. & O. Rd. Co.* (1971), 27 Ohio St.2d 71 [56 O.O.2d 40, 271 N.E.2d 813]."

However, a finding of *per se* negligence does not necessarily bar appellant's claims unless the "uncontroverted physical facts" are such that a reasonable person could only conclude that the proximate cause of the accident was that appellant did not adequately exercise his duty to effectively look and listen for oncoming trains. If there is also evidence that, if believed, proves that appellee was also negligent, then the case should ordinarily be submitted to the jury unless a reasonable person could only conclude that the plaintiff was more than fifty percent responsible. The mere fact of a collision is insufficient to establish that the driver's conduct was the sole proximate cause of the accident. There must be evidence that either an audible or visual warning was given which, had the driver looked or listened, should have been seen. *Strahm v. B. & O. RR. Co.* (1972), 32 Ohio App.2d 333, 61 O.O.2d 508, 291 N.E.2d 783. In the instance of a summary judgment, the evidence must be conclusive in favor of the moving party.

In this case, it is an undisputed physical fact that there was a train in dangerous proximity to the crossing when appellant attempted to cross. Appellant argues that he was placed in a position of danger because appellee failed to adequately warn him of the train's presence. Appellee offered four witnesses who stated that they heard the train give a warning sequence of whistles. Appellant offered negative evidence of a witness who did not hear the whistle prior to stopping at the crossing, and statements of others who did

not hear a whistle on other occasions. Appellant has offered no rebuttal of appellee's evidence that a whistle was sounded at an interval sufficient to warn appellant other than a witness' statement that said he did not hear a whistle being sounded until two to three seconds before impact. The question is whether the negative statement of "nothing heard" is sufficient to rebut the positive testimony of the train crew and independent witnesses who did hear the whistle in sufficient time for appellant to stop. We agree with the trial court that the failure-to-hear testimony was insufficient to create a jury case of appellee's negligence, particularly when the failure-to-hear testimony is further rebutted by the conclusive testimony that the train displayed a headlight that was discernible.

Appellant also argues that appellee was negligent for failing to make its train more discernible. The uncontroverted physical facts show that the train's headlight was on, but appellant argues that, because of other lights near the track, the train's headlight was not discernible. Appellant testified that he traversed the Kinnear Road crossing frequently and, therefore, was aware of the background lights. This should have increased, not decreased, his duty to exercise care in ascertaining whether a particular light was a train light or not. Appellant has offered no affirmative evidence suggesting that the train's headlight was not on. Furthermore, the background lights appellant alludes to were stationary and at different heights than the moving light of the oncoming train, contrary to the headlight presented in *Strahm, supra,* upon which appellant relies. In *Strahm,* the tracks were very close to a parallel interstate highway and the track took a dip just before the crossing; as such, both the train and automobile headlights were moving and at almost identical heights. Additionally, in *Strahm,* the train was traveling seventy-five miles per hour rather than twenty-five to thirty miles per hour.

Appellant relies heavily on two cases both of which are distinguishable on their facts: *Case v. Norfolk & Western Railway Co.* (1988), 59 Ohio App.3d 11, 570 N.E.2d 1132, and *Tolliver v. Consolidated Rail Corp.* (1984), 11 Ohio St.3d 56, 11 OBR 201, 463 N.E.2d 389. In *Case,* the plaintiff was struck by a westbound train that entered a crossing immediately after an eastbound train had vacated the crossing. The plaintiff therein introduced affirmative evidence that, because of the proximity of the two trains, the warning signals of the second train could have been confused with those of the first. Questions of fact were presented because the approach of the second train was masked by the first. In the present case, we have but one train and no affirmative evidence. In *Tolliver,* a question of discernibility was presented because heavy vegetation created a severe visual obstruction to the approach of an oncoming train. Kinnear Road is wide open with no vegetation creating an

obstruction. Both *Case* and *Tolliver* present situations which are not applicable to this case.

In summary, the evidence is that appellant proceeded onto railroad tracks after being warned by properly operating flashing lights that a train was approaching the crossing. The vision of appellant at the crossing was unobstructed. The approaching train was proceeding reasonably and lawfully at the modest rate of speed of twenty-five to thirty miles per hour. The headlight on the train was lit and the crew sounded its whistle at the appropriate time. The fact that appellant, or one of his witnesses, was not aware of the exact location of the train until it was too late for appellant to back off the track that he was blocking does not make appellee liable in any way. When a driver proceeds onto a railroad track after being warned that a train is approaching, it is the responsibility of the driver to ascertain where the train is before proceeding onto a track. At night, with city lights, it requires extra caution because the train headlight may be more difficult to locate, but absent other extraordinary circumstances not present here in contrast to the situations in some of the cases relied upon by appellant, there is no extra special duty imposed upon the railroad that has already taken ample precautions to make the presence of its train known to motorists. The fact that the flashing lights may previously have operated while a train was on the industrial spur does not change the basis for liability. The important fact is that appellant was warned of the presence of a train that might immediately be crossing the track onto which he proceeded.

Thus, appellant has failed to present any evidence that rebuts the physical facts that appellee's train exercised every precaution that it had a duty to exercise while appellant, who chose to proceed onto the tracks while a flashing light indicated that a train was approaching the tracks, failed to exercise proper care for his own safety. Reasonable minds could come to but one conclusion, which is that appellant's negligence was the sole proximate cause of the collision.

Appellant's first and second assignments of error are overruled.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and WILLIAM H. VICTOR, JJ., concur.

WILLIAM H. VICTOR, J., retired, of the Ninth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.