GLICK, Admr., Appellant,

v.

MARLER; Norfolk & Western Railway Company, Appellee.

PERRAULT, Admr., Appellant,

v.

NORFOLK & WESTERN RAILWAY COMPANY, Appellee, et al.*

MARLER, Admr., Appellant,

v.

NORFOLK & WESTERN RAILWAY COMPANY, Appellee.*

[Cite as *Glick v. Marler* (1992), 82 Ohio App.3d 752.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910722, C–910733.

Decided Sept. 30, 1992.

*Waite, Schneider, Bayless & Chesley Co., L.P.A., D. Arthur Rabourn* and *Jane H. Walker,* for appellant Adalyn Glick, individually and as administrator of the estate of Jeffrey Sean Glick.

*Lindhorst & Dreidame* and *James L. O'Connell,* for appellee Norfolk & Western Railway Company.

*Keating, Muething & Klekamp, Gregory M. Utter* and *Michael L. Scheier,* for appellants Louis G. Perrault, as administrator of the estate of Gerred L. Marler, and Karen Marler, as administrator of the estate of Jerome L. Marler.

*Per Curiam.*

The plaintiffs-appellants in the three consolidated cases have taken the instant appeals from the orders of the trial court which entered summary judgment on their wrongful-death claims in favor of the defendant-appellee, Norfolk & Western Railway Company ("N & W"). In challenging the decision of the trial court, the appellants argue that genuine issues of material fact exist regarding (1) the extrahazardous nature of the Cresentville Road railway crossing, (2) the failure of N & W to provide adequate warning, (3) the comparative negligence of the parties, (4) whether there existed a substantial risk that a driver in the exercise of ordinary care would be unable to avoid a collision with the speeding train, and (5) whether N & W's negligence was a proximate cause of the deaths of Jeffrey Glick and Jerome and Gerred Marler. Finding no merit in the assignments advanced by the appellants, we affirm the judgments of the trial court.

I

On January 24, 1987, at approximately 6:30 p.m., Jerome Marler, accompanied by his son Gerred and Jeffrey Glick, was driving his vehicle eastbound on Cresentville Road in Sharonville, Ohio, at approximately thirty-five miles per hour, when he encountered a railroad crossing owned by N & W. Marler reduced the speed of the automobile to two to three miles per hour, and as it crossed over the tracks, it was struck by a northbound N & W train. As a result of the crash, the occupants of the vehicle were killed. Based upon the testimony of witnesses and on other physical evidence, we are able to reconstruct the events which transpired at the scene just prior to the accident. We note, initially, that as Marler proceeded along Cresentville Road, he encountered two railroad warning disks and the letters "RR" painted on the pavement to alert him he was approaching a railroad crossing. His view to the south—due mainly to the time of the year and the resulting defoliation—was unobstructed. The crossing itself had in place crossbuck signs and pole-mounted flashing lights which were functional and operating at the time of the crash.

To the south, the N & W train was beginning to increase its speed after departing the area between Sharon Road and Kemper Road where, pursuant to its timetable regulations and local ordinance, it was required to proceed at a rate of twenty-five miles per hour. Monte Emley, the train's engineer, testified in his deposition that as the train approached the Cresentville Road crossing, the fixed light on the engine was illuminated; that the train was proceeding at a rate of forty to forty-five miles per hour; that there was very little foliage on or near the tracks leading to the crossing; and that at

approximately one hundred to two hundred feet before the whistle post (which was fourteen hundred feet from the crossing), he sounded the train's horn. Ottis Ray, Jr., the train's road conductor, Stanley Garrison, the head brakeman, and Sergeant Paul Davis, a detective for the railroad, all stated during their depositions that the horn was sounded and that the flashing lights were operating at the crossing. Joe Oursler and a passenger in his vehicle, Lori Sophie, were proceeding south on Windisch Road, which runs parallel to the railroad tracks, when they approached a stop sign at the corner of Cresentville Road. In affidavits filed with the court, they stated that the lights at the crossing were flashing; that the headlight on the train's lead engine was illuminated; that the train's horn did sound; and that it was a clear, dry and very cold evening. Emley, Garrison, Oursler and Sophie all agreed that as the Marler vehicle proceeded east on Cresentville Road and approached the crossing, its speed decreased to approximately two to five miles per hour before it continued onto the tracks and was struck broadside by the lead engine.

Karen Marler, individually and as administrator of the estate of Jerome Marler, Louis Perrault, as administrator of the estate of Gerred Marler, and Adalyn Glick, individually and as administrator of the estate of Jeffrey Glick, all filed suit against N & W charging that the accident and the resulting deaths were caused by the railroad's negligence. After a prolonged period of discovery, N & W moved for summary judgment on each of the claims. In an entry dated September 10, 1991, the trial court sustained the motion, holding that the actions of Jerome Marler constituted the sole proximate cause of the accident.

## II

On appeal,[1] Glick, in her sole assignment of error, and Marler and Perrault, in their first assignment of error, allege that the trial court improvidently entered summary judgment in favor of N & W. In support of the assignments, the appellants argue that N & W was negligent in maintaining the Cresentville crossing and that the excessive speed of the train that evening was a significant factor in the cause of the collision. This assignment is without merit.

---

1. Although discussion of the issue of federal preemption is not necessary to dispose of this appeal, we note that because the Ohio Department of Transportation did not act to upgrade the Cresentville Road crossing, it cannot be said that Congress expressly preempted state law governing the issues raised herein. *Barger v. Chesapeake & Ohio Ry. Co.* (1990), 70 Ohio App.3d 307, 590 N.E.2d 1369; *Newton v. Consol. Rail Corp.* (Aug. 5, 1992), Hamilton App. No. C–910441, unreported, 1992 WL 188518.

"Liability for negligence is predicated upon injury caused by the failure to discharge a duty owed to the injured party." *Deeds v. Am. Security* (1987), 39 Ohio App.3d 31, 528 N.E.2d 1308. A cause of action in negligence has four elements: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury resulting. *Menifee v. Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. "Resolution of the question whether a certain party's negligence constituted the proximate cause of another's injury is [ordinarily] a question of fact." *Powell v. Consol. Rail Corp.* (1986), 31 Ohio App.3d 219, 221, 31 OBR 501, 503, 510 N.E.2d 818, 820. Using these principles, we examine the instant record to determine whether genuine issues of material fact remain.

In the instant case, the appellants cite the extrahazardous nature of the Cresentville crossing and claim that N & W had a duty to install additional, more sophisticated warning devices in that area to inform motorists of an approaching train. In support of their position, the appellants rely, in large part, upon the affidavits of Dr. Kenneth Heathington and Thomas Huston, witnesses with considerable knowledge and experience on the subject of railroad crossings, who stated, *inter alia*, that the flashing light signals should have been cantilevered rather than mounted on a post; that the crossing should have been equipped with gates; that a motorist travelling eastward on Cresentville Road had a limited sight distance to the south; and that N & W's failure to maintain the crossing in a reasonable and safe manner was the proximate cause of the accident.

We begin our analysis with the proposition that both a motorist and a train owe each other a duty of care to avoid collisions. *Barger v. Chesapeake & Ohio Ry. Co.* (1990), 70 Ohio App.3d 307, 590 N.E.2d 1369. A railroad has a duty of ordinary care to protect the safety of motorists. *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652; *Newton v. Consol. Rail Corp.* (Aug. 5, 1992), Hamilton App. No. C–910441, unreported. The motorist's duty, on the other hand, has been codified in R.C. 4511.62, which provides, in pertinent part:

"(A) Whenever any person driving a vehicle or trackless trolley approaches a railroad grade crossing under any of the circumstances stated in this section, he shall stop within fifty feet but not less than fifteen feet from the nearest rail of the railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

"(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train;

" * * *

"(4) A train approaching within approximately one thousand five hundred feet of the highway crossing emits a signal audible from that distance and the train, by reason of its speed or nearness to the crossing, is an immediate hazard;

"(5) An approaching train is plainly visible and is in hazardous proximity to the crossing."

Further, in *Zuments v. Baltimore & Ohio R.R. Co.* (1971), 27 Ohio St.2d 71, 72, 56 O.O.2d 40, 40, 271 N.E.2d 813, 814, the Supreme Court held that:

"The driver of a motor vehicle about to pass over a railroad grade crossing on a public highway is required both to look and to listen for approaching trains and the looking and listening must be at such time and place and in such manner as to be effective for that purpose."

The evidence set forth in the record clearly demonstrates that Marler did violate R.C. 4511.62 and was, therefore, negligent *per se*. Such negligence, however, does not automatically bar the appellants' claims. If there is also evidence that the appellee was negligent, there may have been grounds for submitting the case to the jury. *Barger, supra.*

▉▉▉ Under the circumstances of this case, we are not convinced that N & W, in maintaining the crossing or through the actions of its employees in operating the train, breached its duty of ordinary care to Marler or his passengers on the evening of the crash. As set forth *supra*, railroad disks, painting on the pavement, cross-buck signs and pole-mounted flashing lights provided clear notice that Marler was approaching a railway crossing. In spite of the opinions by Heathington[2] and Huston to the contrary, such warnings fully comply with and exceed the statutory requirements set forth in R.C. 4955.33. A railroad is under "no duty to provide extrastatutory warnings at a grade crossing, where such warnings are not required by any order of the Public Utilities Commission, if there is no substantial risk that a driver in the exercise of ordinary care may be unable to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements." *Hood v. New York, Chicago & St. Louis R.R. Co.* (1957), 166 Ohio St. 529, 3 O.O.2d 12, 144 N.E.2d 104, paragraph six of the syllabus. There is no evidence in the record that the Public Utilities Commission found the crossing to be so dangerous as to require additional protective devices, and we are not persuaded that there was a substantial risk that Marler, in exercising

---

2.  Heathington's opinion regarding extrahazardous railway crossings was considered and rejected by the court in *Cox v. Consol. Rail Corp.* (Aug. 28, 1989), Butler App. No. CA89–02–030, unreported, 1989 WL 99314.

ordinary care and faced with the existing warnings, would have been unable to avoid colliding with the N & W train.

The appellants' claim that the N & W train approached the crossing at an excessive rate of speed is also without merit. The record on appeal reveals that the train was operating on class four trackage, which permits the engineer to proceed at a maximum speed of sixty miles per hour. See Section 213.9, Title 49, C.F.R. Here, several witnesses stated that the train was moving at a rate of forty to forty-five miles per hour. Unlike the situation in *In re Miamisburg Train Derailment Litigation* (Sept. 26, 1990), Montgomery C.P. No. 86–2053, unreported,[3] where the railroad was aware that surfacing work had rendered the track susceptible to kinking and buckling, there is no evidence here that N & W had knowledge of any hazard. Rather, the only affirmative evidence in the record on this issue reveals that the track was clear and free of any debris and that the train was proceeding at a speed well below the maximum rate permitted by law.

Accordingly, since the evidentiary materials presented to the trial court and certified to us on appeal disclose no breach by N & W of any duty to any of the occupants of the vehicle driven by Jerome Marler, we hold that the lower court correctly concluded that the actions of Jerome Marler, in operating his vehicle, constituted the sole proximate cause of the collision and that N & W was entitled to judgment as a matter of law.

The second assignment of error advanced by Marler and Perrault alleges that the trial court abused its discretion in denying their motion to compel discovery of N & W's train-speed timetables. This assignment is overruled.

Management of the discovery process lies solely within the sound discretion of the trial court and absent an abuse of that discretion, a decision granting or denying a discovery request will not be disturbed by the reviewing court. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659.

In the instant case, the trial court overruled the appellants' motion to compel discovery of the timetables without setting forth any specific basis for its decision. The motion was filed approximately sixteen months after N & W had moved for summary judgment, and the court apparently was not convinced, in light of the volume of evidentiary materials before it, that the information was vital or necessary in resolving the controversy. Based upon our examination of the record and our review and resolution of the first

---

3. Reporter's Note: An appeal to the Supreme Court of Ohio is pending in Case No. 92–1244.

assignment of error, we are unable to say that the trial court, in overruling the appellants' motion to compel, abused its discretion.

Accordingly, the judgments of the trial court are affirmed.

*Judgments affirmed.*

KLUSMEIER, P.J., HILDEBRANDT and GORMAN, JJ., concur.