OPINION
The plaintiff/appellant, Roger D. Rivers ("the appellant"), appeals the judgment of the Marion County Court of Common Pleas, granting summary judgment in favor of the appellees, CSX Transportation and Marion Landmark, Inc. ("the appellees"). For the following reasons, we hereby reverse the judgment of the trial court.
The pertinent facts and procedural history are as follows. This case arises out of an accident that occurred on December 28, 1999 when the appellant's car collided with a freight train. The accident took place at 11:00 am, when the appellant was returning home from the post office. Although it snowed earlier in the day, it was snowing very lightly at the time of the accident. The appellant's home was located on Union Street in New Bloomington, Ohio. To get to or from the post office, the appellant had to cross either the Main Street railroad tracks or the tracks on Carey Street. He traveled via Main Street to the post office, but took the slightly longer route via Carey Street on his return trip.
There are two sets of tracks at the Carey Street crossing. The southernmost track (the side track) is used to service grain cars that were dropped off to the appellee, Marion Landmark. The other track was the CSX mainline track.
The appellant approached the tracks traveling southbound. He claimed that he fully stopped about five feet south of the first track for about ten to fifteen seconds. According to the appellant, he first looked to the east, in which direction his view was unobstructed, and observed no train. To the west, a grain car was parked on the side track approximately ninety-five feet from the crossing. The appellant asserted that this grain car obstructed his view to the west, so that he was forced to move forward onto the tracks in order to see approaching trains.
When the appellant pulled out onto the tracks, he was struck by a train traveling eastbound on the main track. This train was owned by the appellee, CSX. As maintained by the appellant, the train was traveling at a speed of fifty-eight miles per hour, while he was traveling at a speed of only two miles per hour, at the time of impact.
The Carey Street crossing is not equipped with flashers or gates to warn of oncoming trains, but is marked with cross bucks. According to the appellant's deposition testimony, he lived in New Bloomington for 10 years prior to the accident and had crossed the Carey Street tracks approximately 240 times. However, the appellant claims that he had never encountered a grain car parked so close to the crossing prior to the day of the accident.
CSX owns both sets of tracks at issue in this case. However, the portion of the side track on which the grain car sat was leased to Marion Landmark to facilitate its grain operation. CSX regularly dropped off empty grain cars for Marion Landmark in the vicinity between the Main Street and Carey Street crossings.
The appellant filed negligence actions against both CSX and Marion Landmark. Both appellees filed motions for summary judgment, which were granted by the trial court. The appellant now brings this timely appeal, asserting two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred to the prejudice of the plaintiff/appellant in granting defendants/appellees CSX Transportation, Inc., Michael L. Kennedy, Willis Stamps, and William E. Grogan's Motion for Summary Judgment, finding that there exist no genuine issues of material fact, reasonable minds can only come to a conclusion adverse to plaintiff/appellant and that defendants/appellees are entitled to judgment as a matter of law.
 ASSIGNMENT OF ERROR NO. II The trial court erred to the prejudice of the plaintiff/appellant in granting defendant/appellee Marion Landmark, Inc.'s Motion for Summary Judgment, finding that there exist no genuine issues of material fact, that reasonable minds can only come to one conclusion adverse to plaintiff/appellant and that defendant/appellee is entitled to judgment as a matter of law.
The appellant raises several arguments against the trial court's grant of summary judgment. Because many of the issues pertain to both assignments of error, we will discuss the assignments together.
In considering an appeal from the granting of a summary judgment, our review is de novo, giving no deference to the trial court's determination.[1] Accordingly, we apply the same standard for summary judgment as did the lower court.[2]
Summary judgment is proper when, looking at the evidence as a whole (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, construed most strongly in favor of the nonmoving party, that reasonable minds could only conclude in favor of the moving party.[3] The initial burden in a summary judgment motion lies with the movant to inform the trial court of the basis for the motion and identify those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.[4] Those portions of the record include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action.[5]
Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(C), indicating that a genuine issue of material fact exists for trial.[6] The nonmoving party may not merely rely on the pleadings nor rest on allegations, but must set forth specific facts that indicate the existence of a triable issue.[7]
As a preliminary matter, we note that the appellees challenge the affidavit of the appellant's expert, Mr. Rick Stevens, asserting that it may not properly be considered for the purpose of summary judgment.
The Supreme Court of Ohio has held that, for the purpose of summary judgment, expert witnesses may submit affidavits outlining their opinions based on their personal interpretation of the file, pleadings, and admitted evidence.[8] We have stated previously that an expert's affidavit is proper where it sufficiently describes the expert's qualifications, his reason for being retained, and the procedural aspects of the investigation.[9] Mr. Stevens' affidavit sets forth all of this information and may, therefore, be properly considered for rebuttal of summary judgment.
The appellant first asserts that reasonable minds could find that the appellees were negligent because they permitted the grain car to remain parked ninety-five feet from the crossing, in violation of CSX operating rules.
At the time of the collision, CSX followed the NORAC Operating Rules. Rule 138(d) of these rules states, in relevant part:
 When equipment is standing and obscuring highway traffic's view, an employee must protect the highway traffic against movement on the adjacent tracks. Equipment stored on tracks close to a public crossing must be placed so as to permit a clear view for highway traffic using the crossing. Where space permits, equipment must be placed at least three hundred feet from the crossing.
As CSX points out, we have previously held that operating rules containing language that is "merely directory" should not be considered as evidence of a railroad company's negligence.[10] Therefore, the appellee's failure to comply with the portion of the rule that requires equipment to be placed at least three hundred feet from a crossing "where space permits" cannot establish a question of fact regarding its negligence.
Our holding in Osborn does not apply to Rule 138(d) in its entirety, however. The other provisions in the rule read like requirements, employing the word "must." It is axiomatic that failure to comply with industry safety guidelines constitutes evidence of negligence, thereby creating a question of material fact for the jury.[11] The appellant presented evidence that the appellees violated this rule by allowing the grain car to remain on the side track, in violation of CSX's own mandate that equipment stored on tracks not be placed so as to obstruct the view of highway traffic at a crossing. Specifically, a sworn affidavit of the appellant's expert, Mr. Stevens, states that CSX and Marion Landmark negligently violated Rule 138(d) and that this violation was a cause of the collision. Furthermore, the appellant testified in his deposition that he could not see beyond the grain car without pulling onto the tracks.
CSX argues that Rule 138(d) does not apply in this case. It points us to the affidavit of their expert, Daniel White, former Assistant Director of Operating Rules for Consolidated Rail Corporation, who testified that the rule applies only when a switching crew is placing cars on a track. Upon close examination of this statement, we conclude that the affiant was referring only to the portion of Rule 138(d) which states: "[w]hen equipment is standing and obscuring highway traffic's view, an employee must protect the highway traffic against movement on the adjacent tracks." Therefore, the other portions of the rule could apply in this case.
The appellant claims that CSX should have notified Marion Landmark of the hazard created by the grain car or required Marion Landmark to move the car. CSX argues that it is under no such legal duty. In support of this argument, CSX cites its lease agreement with Marion Landmark, under which Marion Landmark agrees to indemnify CSX. While this agreement may be relevant in a suit by CSX against Marion Landmark, in light of the appellant's evidence, it is insufficient to absolve CSX of any duty to the appellant with regards to the grain car. Thus, there remains a question of material fact as to whether CSX was negligent in allowing the grain car to remain on the side track.
The appellant next argues that reasonable minds could conclude that CSX was negligent in operating its train at an excessive speed under the circumstances. CSX counters that the appellant's claim on this issue is preempted by federal law.
We agree with CSX that, in most circumstances, claims based on the excessive rate of speed of a train are preempted by the Federal Railroad Safety Act of 1970 ("FRSA").[12] State common law negligence claims may be preempted if they attempt to impose regulations in an area that is already occupied by the FRSA.[13] However, the statute contains a saving provision under which a state is permitted to adopt more stringent laws "when necessary to eliminate or reduce an essentially local safety hazard."[14]
There seems to be no dispute that the CSX train was operating within the FRSA speed guidelines. However, the appellant claims that the train was traveling too fast in light of the snowy conditions and the grain cars parked on the side track. Thus, our inquiry is whether these conditions are the type of essentially local hazards that necessitate a more stringent state law.
Most courts that have considered this issue have held that
 a "specific individual safety hazard" must be a discrete and truly local hazard, such as a child standing on the railway. They must be aberrations which the Secretary could not have practically considered when determining train speed limits under FRSA. [citation omitted] More precisely phrased, the "local hazard" cannot be statewide in character and cannot be capable of being adequately encompassed within uniform, national standards.[15]
Several courts have already ruled that conditions at a train crossing, like rail cars that obstruct a driver's view, do not constitute unique local conditions.[16] We agree. In Easterwood, the Supreme Court held that FRSA section 213.9(a) "should be understood as covering the subject matter of train speed with respect to track conditions, including conditions posed by grade crossings."[17] The grain car in this case falls within the purview of Easterwood and its progeny and, thus, is preempted by the FRSA.
As to the appellant's claim regarding inclement weather conditions, we decline to address the issue of whether the FRSA applies. In his deposition, the appellant admits that, to the extent that it was snowing at all at the time of the accident, "there might have been some flurries" but that there was not heavy snowfall. Therefore, we conclude that reasonable minds can only conclude that the weather conditions were not a significant factor in this case.
The appellant also argues that reasonable minds could conclude that the CSX negligently failed to sound the train's warning horn. According to the appellant, he heard no horn or whistle prior to the collision with the CSX train. He presented the deposition testimony of two other witnesses who were in the vicinity of the accident, neither of whom recall hearing the train horn. Mr. Raymond Beltz, who was sick and dozing in bed at his home near the crossing, testified that he did not recall hearing a horn. Mr. Mark Heller was driving on State Route 95, parallel to the track. He provided even less certain testimony regarding whether a warning sounded prior to the collision. After stating that he often tuned out train whistles because he was so used to them, he testified that he could not be certain that the whistle sounded although he assumed it did.
Both appellees point out that the appellant is relying solely on negative or uncertain testimony to show a question of material fact regarding this issue. They note that Ohio courts have refused to allow such evidence to defeat a summary judgment motion in cases similar to this one. The appellees also assert that they have substantial evidence that the horn was sounded, in the form of the testimony of train personnel and physical evidence from the train's data recorder.[18] The appellees cite several cases in support of their arguments.[19]
Marion Landmark cites to Clark v. Baltimore O.R. Co.,[20]
stating the proposition that
 [w]here a witness testifies that warning signals were not given or that he did not hear such warning signals, and it appears that the witness was not listening to hear such signals or not paying attention as to whether they were given or not, such testimony is negative, and in the face of substantial uncontradicted testimony that the signals were given, the evidence is not sufficient to present to the jury the question as to whether such signals were given.[21]
We agree with the appellees that neither the testimony of Mr. Beltz nor of Mr. Heller is sufficient to overcome summary judgment, in that both testified that they were not listening for a train whistle prior to the collision. However, this case is distinguishable from the Clark case and from the other case that the appellees cite.
There was substantial evidence in the Clark case that the driver of the vehicle was not paying attention at the time of the collision. The plaintiff, a young girl in the back seat of the vehicle, testified that the radio was playing and that she was talking with other girls in the car. There were skid marks leading up to the tracks, indicating that the driver had not noticed or slowed for the train crossing abruptly. Similarly, in Davidson v. CSX Transportation,[22] a case relied upon by CSX, the plaintiff, who was also the driver of the vehicle, stated that the radio was playing loudly prior to the collision. Finally, in Tardyv. Norfolk S. RR.,[23] another case cited by CSX, the driver of the vehicle died in the collision and the plaintiff offered only the negative testimony of two bystanders.
In the instant case, the appellant, who was also the driver of the vehicle, stated that he did not hear a warning whistle sound. He also testified that he was not listening to the radio prior to the collision. Furthermore, the appellant presented uncontroverted testimony that he slowed before the crossing and proceeded with caution. Therefore, this is not a case where there is substantial evidence that the plaintiff/witness was not listening to hear warning signals or not paying attention as to whether they were given or not.[24] We conclude that reasonable minds could differ as to whether the CSX train properly sounded a warning whistle or horn.
The appellees argue that the appellant's contributory negligence bars his claims as a matter of law. They contend that the appellant violated both his statutory and common-law duty to effectively look and listen for the on-coming CSX train.
A motorist's duty to avoid collision with a train is codified in R.C.4511.62, which states in relevant part:
 (A)(1) Whenever a person driving a vehicle * * * approaches a rail grade crossing, the person shall stop within fifty feet, but not less than fifteen feet from the nearest rail of the railroad if any of the following circumstances exist at the crossing:
* * * *
 (e) An approaching train is emitting an audible signal or is plainly visible and in hazardous proximity to the crossing.
Furthermore, it is axiomatic that a driver has a common-law duty to both look and listen in an effective manner prior to crossing over a railroad track.[25] We have previously held that this duty is heightened whenever a motorist's view of a crossing is obstructed.[26]
Nevertheless, because there remains a question of fact as to whether a warning whistle was sounded and because the appellant testified that he both looked and listened at the crossing, we cannot hold as a matter of law that his negligence, if any, was the sole proximate cause of his injuries.
Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment reversed.
BRYANT and WALTERS, JJ., concur.
[1] Schuch v. Rogers (1996), 113 Ohio App.3d 718, 720.
[2] Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6, 8.
[3] Civ.R. 56(C); Horton v. Harwick Chemical Corp. (1995),73 Ohio St.3d 679, 686-87.
[4] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[5] Civ.R. 56(C).
[6] Dresher v. Burt, 75 Ohio St.3d at 293.
[7] Shaw v. J. Pollock Co. (1992), 82 Ohio App.3d 656, 659.
[8] Tomlinson v. Cincinnati (1983), 4 Ohio St.3d 66.
[9] Lane v. City of Marion (March 29, 2001), Marion App. No. 9-2000-104.
[10] Osborn v. Norfolk Western Ry. Co. (1990), 68 Ohio App.3d 85,90.
[11] Hinckley v. Kratz (1995), 103 Ohio App.3d 53, 56; Keeton v.Telemedia Co. of S. Oh. (1994), 98 Ohio App.3d 405.
[12] CSX Transp., Inc. v. Easterwood (1993), 507 U.S. 658; Freeman v.Norfolk Western Ry. Co. (1994), 69 Ohio St.3d 611.
[13] Armstrong v. Atchison Topeka Santa Fe Ry. Co. (W.D. Texas 1994), 844 F. Supp. 1152, 1152.
[14] 45 U.S.C. § 434.
[15] O'Bannon v. Union Pacific RR. Co. (W.D.Mo. 1997),960 F. Supp. 1411, 1420-21, citing Armstrong, 844 F. Supp. at 1153;Bowman v. Norfolk S. Ry. Co. (D.S.C. 1993), 832 F. Supp. 1014, 1018;Easterwood v. CSX Transp., Inc. (11th Circ. 1991), 933 F.2d 1548, 1553
n. 3, aff'd (1993), 507 U.S. 658.
[16] Earwood v. Norfolk S. Ry. Co. (N.D.Ga. 1993), 845 F. Supp. 880,887 (view obstructed by grain cars). See, also, Bahuyzen v. NationalRR. Passenger Corp. (W.D.Mich. 1996), 20 F. Supp.2d 1113, 1117
(obstructed view); Wright v. Illinois Cent. RR. Co. (1994),868 F. Supp. 183 (vegetation, inadequate warnings).
[17] Easterwood, 507 U.S. 658, 674.
[18] Both appellees seem to suggest that the data recorder amounts to conclusive evidence that the train's warning signal was sounded. However, we see no reason why the appellant should not be allowed to present expert testimony to dispute the accuracy of the recorder or the interpretation of its contents.
[19] One of the cases cited by CSX, Barger v. Chesapeake Oh. Rwy.Co. (1990), 70 Ohio App.3d 307, has been abrogated by the Supreme Court of Ohio. Therefore, we decline to discuss it here.
[20] (C.A. Oh 1952), 196 F.2d 206.
[21] Id. at 211.
[22] (1993), 91 Ohio App.3d 27.
[23] 103 Ohio App.3d 372.
[24] See Green v. BO RR. Co. (C.A. Oh 1962), 299 F.2d 837.
[25] Zuments v. Baltimore O.R. Co. (1971), 27 Ohio St.2d 71,72.
[26] Osborn, 68 Ohio App.3d at 90-91.