LINTNER, Admr., Plaintiff–Appellant,

v.

NORFOLK & WESTERN RAILWAY COMPANY et al., Defendants–Appellees.

[Cite as *Lintner v. Norfolk & W. Ry. Co.* (1997), 118 Ohio App.3d 838.]

Court of Appeals of Ohio,
Twelfth District, Preble County.

No. CA96–09–015.

Decided March 24, 1997.

*Gerald L. Nuckols,* for plaintiff–appellant.

*James L. O'Connell,* for defendants–appellees.

POWELL, Judge.

Plaintiff-appellant, Charlotte Lintner, administrator of the estate of Gregory Lintner, deceased, appeals a decision of the Preble County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Norfolk & Western Railway Company, Joseph J. Waymire, William N. Sheehan, and Jeffrey L. Simon.

On Sunday, April 16, 1995, at approximately 3:50 p.m., a motor vehicle driven by Cheryl A. Ehrnschwender collided with a train owned and operated by Norfolk & Western Railway Company ("Norfolk & Western"). The weather was clear, dry, and sunny. The Ehrnschwender vehicle contained two passengers, appellant's decedent, Gregory Lintner ("Lintner"), and James Fishbaugh. The Norfolk & Western train crew consisted of the engineer, William Sheehan, the conductor, Joseph W. Waymire, and Jeffrey L. Simon.

The Norfolk & Western railroad track runs north and south and intersects Camden College Corner Road south of Camden, Ohio. County Road 227 also runs north and south and parallels the railroad track to the east. Camden College Corner Road meets County Road 227 and runs east and west. The point at which Camden College Corner Road meets County Road 227 is approximately eighty-four feet east of the Norfolk & Western railroad track.

The Ehrnschwender vehicle proceeded south along County Road 227 and then turned right, or west, on to Camden College Corner Road. The Norfolk & Western train was traveling south on the railroad track, moving from Ehrn-

schwender's right to left. The railroad crossing was marked with an advance warning disc situated approximately halfway, or forty-two feet, between County Road 227 and the crossing; with a white painted stop bar extending south across the westbound portion of Camden College Corner Road; and with reflectorized standard crossbuck signs on either side of the railroad track. Further, the record indicates that a motorist proceeding west on Camden College Corner Road would have a clear, unobstructed view of a train proceeding south along the railroad track. The Ehrnschwender vehicle approached and entered the crossing at a very low rate of speed and traveled directly into the path of the oncoming train. All three occupants of the vehicle, namely Ehrnschwender, Lintner, and Fishbaugh, died as a result of the injuries they received in the collision.[1]

On August 8, 1995, appellant, administrator of Lintner's estate, filed a wrongful death action against appellees, seeking damages as a result of Lintner's death. Appellees subsequently filed a motion for summary judgment on July 29, 1996. Appellant opposed appellees' motion. On August 29, 1996, the trial court granted appellees' motion for summary judgment, finding that Ehrnschwender's failure to look and yield was the sole proximate cause of the collision. It is from this judgment that appellant now appeals, setting forth the following assignment of error:

"The trial court erred when granting appellees' motion for summary judgment when reasonable minds could differ."

In her sole assignment of error, appellant contends that the trial court erred by granting appellees' motion for summary judgment. Appellant argues that summary judgment was improperly granted because there is evidence that the train failed to sound its whistle as it approached the Camden College Corner Road crossing, and that reasonable minds could differ as to whether the failure to sound the whistle was a proximate cause of the collision between the train and Ehrnschwender's vehicle.

Summary judgment is appropriate where (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds construing the evidence in favor of the nonmoving party could reach but one conclusion which is adverse to the nonmoving party. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; Civ.R. 56(C). When reviewing an entry of summary judgment, an appellate

---

1. Blood tests conducted in conjunction with the autopsies of the victims reveal that all three victims were intoxicated above the legal limit of .10. Twenty-four hours after the collision, Ehrnschwender had a blood-alcohol level of .12, Lintner had a blood-alcohol level of .19 and Fishbaugh had a blood-alcohol level of .18. In addition, Ehrnschwender and Lintner tested positive for marijuana and Fishbaugh tested positive for cocaine.

court applies the same standard used by the trial court and must examine all evidence properly presented to determine whether there is a genuine issue as to any material fact and reasonable minds can reach only one conclusion, which is adverse to the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141; *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123.

■ Both motorists and railroad trains owe a duty of care to one another to avoid collisions. *Cates v. Consol. Rail Corp.* (1995), 100 Ohio App.3d 288, 296, 653 N.E.2d 1229, 1234; *Glick v. Marler* (1992), 82 Ohio App.3d 752, 756, 613 N.E.2d 254, 257–258. Specifically, Ohio law imposes certain duties upon railroads in terms of approaching, entering, and maintaining grade crossings. Railroads are required to sufficiently maintain and repair crossings where any public roadway intersects the railroad tracks. R.C. 4955.20. Railroads are required to attach a bell and whistle to each train, and the person in charge of the train is required to sound the whistle and continuously ring the bell until the engine of the train passes a crossing. R.C. 4955.32. Railroads are also required to erect crossbuck signing "in accordance with the department of transportation manual for uniform traffic control devices" and a three-panel sign bearing the word "yield" on the middle panel at all grade crossings. R.C. 4955.33. In addition, railroads must destroy or remove any obstructive vegetation at grade crossings. R.C. 4955.36.

Likewise, Ohio law imposes specific duties upon motorists who approach and enter a railroad crossing. A motorist approaching a railroad crossing must stop "within fifty feet but not less than fifteen feet from the nearest rail of the railroad, and shall not proceed until he can do so safely" where the approaching train emits an audible signal or the oncoming train is plainly visible and is in hazardous proximity. R.C. 4511.62(A)(4) and (5). The Ohio Supreme Court has also defined a motorist's duty when approaching a railroad crossing as follows:

■ "The driver of a motor vehicle about to pass over a railroad grade crossing on a public highway is required both to look and to listen for approaching trains, and the looking and listening must be at such time and place and in such manner as to be effective for that purpose. Where the uncontrovertible physical facts demonstrate that plaintiff's decedent did not so do, then such failure on his part was a proximate cause of the collision as a matter of law." *Zuments v. Baltimore & Ohio RR. Co.* (1971), 27 Ohio St.2d 71, 72, 56 O.O.2d 40, 271 N.E.2d 813, 814. Thus, where a reasonable person could only conclude that the proximate cause of a collision between a motor vehicle and a train was that the motorist did not properly exercise his duty to look and listen for an approaching train, a motorist will not be permitted to recover from the railroad. *Barger v. Chesapeake & Ohio Ry. Co.* (1990), 70 Ohio App.3d 307, 314, 590 N.E.2d 1369, 1373.

■■ Testimony of a witness that he or she either heard a train sound its whistle ("positive testimony") or did not hear a train sound its whistle ("negative testimony") prior to a collision is not probative unless the witness was in a position to know whether the whistle was sounded or actually hear the whistle being sounded. *Hicks v. Baltimore & Ohio R.R. Co.* (1953), 160 Ohio St. 307, 52 O.O. 202, 116 N.E.2d 307, paragraph one of the syllabus. Negative whistle testimony is insufficient to create an issue of material fact for a jury where positive whistle testimony has been presented, there is conclusive testimony that additional warning signals were employed by the railroad, and there is independent evidence that the driver of the vehicle involved in the collision was negligent. *Barger*, 70 Ohio App.3d at 314–315, 590 N.E.2d at 1373–1374; *Runge v. Norfolk S. Corp.* (C.P.1991), 62 Ohio Misc.2d 74, 77, 591 N.E.2d 1381, 1382–1383.

Joseph Waymire, the conductor of the train involved in the collision, testified in a deposition that April 16, 1995 was a clear, sunny day. He testified that he observed the Ehrnschwender vehicle, a pickup truck, as it approached the railroad crossing and that it was traveling at a slow rate of speed, perhaps ten m.p.h. According to Waymire, when the train crew realized that the train was going to make contact with the truck, the emergency valve of the train was activated. Waymire stated that very little time passed between the moment when he first saw the Ehrnschwender vehicle and the impact.

Waymire testified that warning signals were employed by the train as it approached the crossing. Waymire testified that the train's bell was ringing, the lights on the train were flashing, and the train's whistle was blowing. Waymire stated that there are five railroad crossings in the city of Camden and that the whistle was sounded at all five crossings. In addition, Waymire specifically recalled that he had sounded the whistle for the Camden College Corner Road crossing and that the whistle was sounding at the time of impact.

William Sheehan, the engineer of the train involved in the collision, testified in a deposition that April 16, 1995 was a hazy, sunshiny day and visibility was good. He testified that as he approached the crossing in question, he saw the Ehrnschwender vehicle approaching the crossing. Sheehan stated that when he first saw the vehicle, the front of it was approximately thirty or forty feet from the tracks and the front of the train was approximately two hundred feet from the crossing. Sheehan stated that the truck was traveling slowly and that he thought that it was going to stop, but it continued to move at a constant speed. According to Sheehan, no more than three seconds passed between the moment he saw the truck and the impact.

Sheehan testified that as the train approached the crossing in question, warning signals were activated. He testified that the train's headlight was illuminated on bright beam, the crossing warning lights on the engine were

blinking as they automatically do when the whistle is blown, the train's bell was ringing, and the whistle was sounding. He testified that as engineer, he is responsible for the whistle. He stated that he was approximately one thousand nine hundred feet from the crossing, where the whistle posts are located, when he began to sound the whistle. Sheehan also testified that he has a specific, distinct, individual recollection for sounding the whistle for the Camden College Corner Road crossing in Camden, Ohio on April 16, 1995.

Anna E. Huffman, a Camden resident, testified that on April 16, 1995, at approximately 4:00 p.m., she was at her granddaughter's house, which is located at 310 South Main Street in Camden. Huffman stated that South Main Street runs north and south and that her granddaughter's house is located on the east side of the street. Huffman stated that the Norfolk & Western railroad tracks run parallel to South Main Street and are just west of the street. Huffman stated that the railroad tracks cross South Main Street just north of her granddaughter's house and that the next crossing, which is just south of her granddaughter's house, is the Camden College Corner Road crossing. Huffman testified that April 16, 1995 was a pretty day and that visibility was good.

Huffman testified that she heard the train as it was traveling south that day and that she heard the train blow its whistle more than one time. Huffman stated that the whistle blew for the South Main Street crossing and blew "all the way down" past her granddaughter's house. Huffman stated that in addition to herself and her granddaughter, three other individuals were present at the house that day. Huffman testified that she and the other people present in the home were engaged in conversation before the train whistle began to blow, the whistle drowned out their conversation, and they commented on the whistle being very loud.

In support of their motion for summary judgment, appellees offered the affidavits of three individuals who stated that the whistle of the train was blown on April 16, 1995 prior to the collision. Jo Anna Lynn Cupp, Huffman's granddaughter, stated that on April 16, 1995, at approximately 4:00 p.m., she was in the living room of her home, which is approximately one-quarter mile north of the Camden College Corner Road railroad crossing. Cupp stated that she clearly heard repeated whistle signals sounded by the southbound Norfolk & Western train as it passed her house and that she also heard the train begin to sound whistle signals for the Camden College Corner Road crossing, so that there was an almost continuous sounding of the train's whistle for a period of time.

Larry D. Moore stated in an affidavit that on April 16, 1995 he resided at 8924 County Road 227 in Camden, which is approximately one-eighth of a mile north of the point at which Camden College Corner Road intersects the Norfolk & Western railroad tracks. Moore stated that, at approximately 4:00 p.m., he saw

the southbound train pass his house and heard it sounding whistle signals for the Camden College Corner Road crossing. He stated that the whistle signals were sounded both before and after the train reached his house. According to Moore, the whistle signals were so loud that the noise irritated several of his dogs to the extent that they began to whine and howl.

Tim W. Brown stated in an affidavit that he was inside the home of Jo Anna Lynn Cupp on April 16, 1995 at approximately 4:00 p.m. Brown stated that he clearly heard several blasts of the whistle of a passing southbound train and that the whistle signals were sufficiently loud that they interfered with the conversation that was taking place at that time. He stated that whistle signals were sounded both as the train passed the Cupp residence and beyond the residence.

In response to appellee's motion for summary judgment, appellant offered the affidavits of two individuals who stated that they did not hear the train whistle sound prior to the collision. Ronnie J. Chegwidden stated in an affidavit that on April 16, 1995 he was driving a car north on County Road 227 near Camden. He stated that he saw the Ehrnschwender vehicle as it traveled south on County Road 227, turned right onto Camden College Corner Road, and approached the railroad tracks. He stated that at the same time he also saw the train traveling south along the railroad tracks just west of County Road 227. Chegwidden stated that he saw the vehicle proceed across the railroad tracks at a slow rate of speed and collide with the train. He stated that he did not hear the train sound its whistle.

Rebecca Y. Means stated in an affidavit that she was a passenger in the Chegwidden automobile on April 16, 1995. She stated that the radio in the car was not on and the windows were rolled down. She stated that as she and Chegwidden were proceeding north on County Road 227 toward the intersection of County Road 227 and Camden College Corner Road, she noticed the Ehrnschwender vehicle traveling south on County Road 227. At that same time, Means stated that she saw a train proceeding south, parallel with the vehicle but west of County Road 227. She stated that she saw the vehicle turn right onto Camden College Corner Road and then proceed across the railroad tracks, where it was struck by the train. She stated that she did not hear a whistle come from the train.

The trial court granted appellees' motion for summary judgment, finding that Ehrnschwender's failure to look and to stop as she approached the crossing was the sole proximate cause of the collision. The court found that the railroad tracks and crossing at Camden College Corner Road were not obstructed in any way and that Ehrnschwender would have had a clear view of the train. The court found that the railroad crossing was marked as required by R.C. 4955.33, the headlight of the train was illuminated, and that Ehrnschwender failed to stop

prior to impact. The court also found that an issue of fact existed as to whether the whistle of the train was sounded, since conflicting testimony on this issue was presented. However, the court found that the factual issue concerning the whistle was not material, as Ehrnschwender was negligent and reasonable minds could only conclude that had Ehrnschwender looked as she approached and began to pass over the crossing, she would have seen the train approaching in time to avoid the collision.

Appellant argues that this court's recent decision in *Lingsch v. Norfolk & W. Ry. Co.* (Aug. 14, 1995), Butler App. Nos. CA95–01–008 and CA95–03–051, unreported, 1995 WL 476194, supports a reversal in the instant case. *Lingsch* involved a collision between a motor vehicle and a train resulting in the death of the vehicle's driver. In *Lingsch,* this court reversed the trial court's grant of summary judgment to Norfolk & Western, finding that genuine issues of material fact precluded summary judgment in Norfolk & Western's favor. Specifically, this court found that evidence presented concerning visual obstructions at the crossing and the trial court's failure to consider negative whistle testimony presented issues of material fact and that reasonable minds could reach different conclusions as to the weight and sufficiency of such evidence.

We find that the *Lingsch* analysis is inapplicable to the case at bar. In this case, there is no evidence that the Camden College Corner Road crossing was obstructed in any way. In fact, the trial court found that Ehrnschwender would have had a clear view of the train as it approached the crossing had she looked and exercised ordinary or reasonable care for her own safety and the safety of her passengers. Further, the trial court also considered the negative whistle testimony presented by appellant, unlike the trial court in *Lingsch,* and specifically determined that while there was an issue of fact as to whether the whistle was sounded, Ehrnschwender's negligence was the sole proximate cause of the collision and reasonable minds could not conclude otherwise.

Based upon a careful review of the record, we find that the trial court properly granted summary judgment in favor of appellees. Despite the conflicting evidence presented concerning whether the train sounded its whistle prior to reaching the Camden College Corner Road crossing, we find that that issue of fact is not material to a resolution of the case at bar. See *Murphy,* 65 Ohio St.3d at 360, 604 N.E.2d at 140–141. Viewing the evidence in a light most favorable to appellant, we find that even if the train had failed to sound its whistle, Ehrnschwender's failure to look and stop was the sole proximate cause of the collision. See *Zuments,* 27 Ohio St.2d at 72, 56 O.O.2d at 40–41, 271 N.E.2d at 814; *Barger,* 70 Ohio App.3d at 314, 590 N.E.2d at 1373; *Caudill v. Norfolk & W. Ry. Co.* (Feb. 6, 1995), Butler App. No. CA94–04–094, unreported, 1995 WL 42376. In fact, the record indicates that the train was clearly visible as it approached the

Camden College Corner Road crossing from the north.   Accordingly, appellant's sole assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and KOEHLER, J., concur.