OPINION *Page 2 
{¶ 1} Plaintiff-Appellant Cari Knoerzer ("Cari"), as Administrator of the Estate of Steven D. Knoerzer ("Steven"), deceased, appeals from the October 16, 2007 Judgment Entry of the Court of Common Pleas, Allen County, Ohio granting summary judgment in favor of Defendants-Appellees ("Appellees") CSX Transportation, Inc. ("CSX"), Jack Moderwell ("Moderwell"), and Ralph Sickles ("Sickles").
 {¶ 2} This matter stems from a fatal car/train accident which occurred on December 17, 2003 at the intersection of the CSX Railroad crossing and North Thayer Road, located in Bath Township, Allen County, Ohio. On this date, at approximately 9:08 p.m., Steven was traveling south on North Thayer Road when he approached the railroad crossing and was struck and killed by a CSX locomotive traveling in a westerly direction. At this time, the train was being operated by Engineer Moderwell and Conductor Sickles.
 {¶ 3} On October 13, 2005 Cari Knoerzer brought the instant action for wrongful death in her capacity as Administrator of the Estate of Steven Knoerzer against CSX, Moderwell, and Sickles. On May 4, 2007 Appellees filed a motion for summary judgment. After receiving an extension of time in which to file a response, Cari filed her response in opposition to Appellees' motion for summary judgment on September 14, 2007. On October 16, 2007 the trial court entered a *Page 3 
Judgment Entry wherein the court granted summary judgment in favor of CSX, Moderwell, and Sickles on all of the claims asserted against them by Cari.
 {¶ 4} Cari now appeals, asserting two assignments of error.
 ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED IN SUSTAINING APPELLEES/DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN LIGHT OF THE TRIAL COURT'S FAILURE TO THOROUGHLY REVIEW THE RECORD BEFORE IT AS REQUIRED BY CIV. R. 56, IN TERMS OF THE SUFFICIENT EVIDENCE PRESENTED BY APPELLANTS/PLAINTIFFS TO OVERCOME SUMMARY JUDGMENT.
 ASSIGNMENT OF ERROR NO. 2 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF/APPELLANT IN GRANTING DEFENDANTS/APPELLEES CSX TRANSPORTATION, INC., JACK MODERWELL, AND RALPH SICKLES' MOTION FOR SUMMARY JUDGMENT, FINDING THAT THERE EXIST NO GENUINE ISSUES OF MATERIAL FACT, REASONABLE MINDS CAN ONLY COME TO A CONCLUSION ADVERSE TO PLAINTIFF/APPELLANT AND THAT DEFENDANTS/APPELLEES ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.
 {¶ 5} In her first assignment of error, Cari alleges that the trial court erred by failing to thoroughly review the record prior to granting Appellants' motion for summary judgment. In her second assignment of error, Cari alleges that the trial court erred by granting summary judgment in favor of Appellants because sufficient credible evidence was presented to create genuine issues of material fact. For ease of discussion, we elect to address both of Cari's assignments of error together. *Page 4 
 {¶ 6} An appellate court reviews a grant of summary judgment independently, without any deference to the trial court.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. Hasenfratz v. Warnement 3rd
Dist. No. 1-06-03, 2006-Ohio-2797 citing Lorain Nat'l. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ. R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C); see Horton v. Harwick Chem.Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.
 {¶ 7} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292, *Page 5 662 N.E.2d 264. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ. R. 56(E). In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7,663 N.E.2d 653.
 {¶ 8} We have previously stated that in order to defeat a motion for summary judgment filed by a defendant in a negligence action, a plaintiff must show that when the evidence is considered most favorably to plaintiff: (1) defendant owed him a duty; (2) the evidence is sufficient to allow reasonable minds to infer that the duty was breached; (3) plaintiff was injured; and (4) the breach of duty was the proximate cause of plaintiff s injury. Cottrill v. Knaul, 3rd Dist. No. 9-07-12, 2007-Ohio-5196 citingHemmelgarm v. Vagedes, 3rd Dist. No. 10-04-14,2005-Ohio-673 at ¶ 12 citing Mowery v. McCracken (Aug. 31, 1987), 3rd Dist. No. 5-85-33, 1987 WL 16262 at *2.
 {¶ 9} Additionally, we have also held that in a comparative negligence action, if the trial court can make any one of the following determinations as a matter of law, then summary judgment may be appropriate: (1) the defendant was *Page 6 
not negligent; or (2) the defendant's negligence, if any, was not the proximate cause of plaintiff's injury; or (3) the plaintiff's own negligence outweighed any of the defendant's negligence. Id. at ¶ 7 citing Vagedes, 2005-Ohio-673 at ¶ 12, citing Mowery (Aug. 31, 1987), 3rd Dist. No. 5-85-33 at *2.
 {¶ 10} Both a motorist and a train owe each other a duty of care to avoid collisions. Cates v. Consolidated Rail Corp. (1995),100 Ohio App.3d 288, 296, 653 N.E.2d 1229; Lintner v. Norfolk Western RailwayCo. (1997), 118 Ohio App.3d 838, 694 N.E.2d 140. A motorist has a duty as he or she is approaching a grade crossing "to look and listen for approaching trains and the looking and listening must be at such time and place and in such a manner as to be effective for that purpose."Id. at 841 citing Zuments v. Baltimore Ohio RR. Co. (1971),27 Ohio St.2d 71, 72, 271 N.E.2d 913; see also Osborn v. Norfolk Western Ry.Co. (1990), 68 Ohio App.3d 85, 90, 587 N.E.2d 433. The motorist's duty to avoid collision with a train when driving across railroad grade crossings is also codified in R.C. 4511.62 which provides, in relevant part, as follows:
 (A)(1) Whenever any person driving a vehicle or trackless trolley approaches a railroad grade crossing, the person shall stop within fifty feet, but not less than fifteen feet from the nearest rail of the railroad if any of the following circumstances exist at the crossing:
 (a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.
 (b) A crossing gate is lowered.
 * * * *Page 7 
 (e) An approaching train is emitting an audible signal or is plainly visible and is in hazardous proximity to the crossing.
 {¶ 11} Additionally, in Matkovich v. Pernn Central Transp. Co. (1982),69 Ohio St.2d 210, 431 N.E.2d 652, the Supreme Court of Ohio held that a railroad has a duty of ordinary care to protect the safety of motorists. Ohio law also imposes certain duties upon railroads in terms of approaching, entering, and maintaining grade crossings. For example, railroads are required to sufficiently maintain and repair crossings where any public roadway intersects the railroad tracks. R.C. 4955.20. Railroads are also required to attach a bell and whistle to each train and the person in charge of the train is required to sound the whistle and ring the bell until the engine of the train passes a crossing. R.C. 4955.32.
 {¶ 12} In the present case, Cari alleges that the trial court erred in granting summary judgment in favor of Appellees as genuine issues of material fact exist regarding whether or not the train crew blew the horn as the train proceeded through the Thayer Road crossing. Specifically, Cari alleges that the issue of whether the train's horn was blown is material to the issue of whether the Appellees breached their common law and statutory duties as well as the duty imposed on Steven to yield to the train.
 {¶ 13} Our review of the record reveals that Engineer Moderwell testified at his deposition that when approaching a railroad grade crossing "you start blowing the whistle at the whistle signal, two longs, a short, and a long, until you've *Page 8 
cleared the crossing." Moderwell testified that he remembered blowing the whistle "at least two longs, a short, and a long, maybe more" starting at the whistle post when approaching the crossing prior to the accident in the present case. Moderwell also testified that there was nothing unusual he noticed about the whistle post as he approached the Thayer Road crossing.
 {¶ 14} Similarly, Conductor Sickles testified at his deposition that Moderwell had the bell of the train on and was also sounding the horn as the train approached the crossing. Specifically, Sickles testified that he remembered Moderwell blowing "the two longs, a short, and a long and two longs, a short and a long."
 {¶ 15} Additionally we note that Moderwell and Sickles submitted affidavits (filed in support of Appellees' motion for summary judgment) wherein they both stated that as the train approached the accident crossing, the train's horn was blown intermittently, in the pattern of two longs, a short and a long, and the train's bell was ringing continuously beginning at or about the whistle post.
 {¶ 16} Ohio State Patrol Officer William Bowers ("Bowers") testified in his deposition that he was the investigating officer assigned to this accident. Bowers testified that he interviewed Moderwell and Sickles as well as Jean Huffer ("Huffer"), the independent witness to the accident, and ultimately completed a written report of this accident. Bowers testified that as part of his statement, *Page 9 
Moderwell indicated that prior to the time of impact he (Moderwell) had the crossing bells on and the horn sounding properly. Bowers testified that Moderwell's written statement was consistent with what Moderwell told him during their interview and that he had no reason to believe this statement was not true. Additionally, specifically regarding the issue of whether or not the train sounded an audible warning at the crossing prior to the accident, Bowers testified that both Moderwell and Sickles told him that "it [the whistle] was on and was operating" but that Huffer told him she didn't hear the whistle. Although Bowers admitted these were conflicting stories, he testified that he could not reach a conclusion one way or another as to whether the whistle was blown properly at the crossing.
 {¶ 17} Jean Huffer was the only independent witness to the December 17, 2003 accident. In her deposition Huffer testified that she was traveling in her car immediately behind Steven's car prior to the accident. Huffer testified that she wasn't listening for the train's horn and stated "[a]ll I can say is I did not hear it. It does not mean it did not blow." Huffer also testified that she lives by railroad tracks, that trains go by every day, and that she doesn't hear most of them [train horns]. Additionally, Huffer submitted an affidavit (filed in support of Appellees' motion for summary judgment) wherein she stated as follows: "I did not hear the train horn or whistle. I was driving with my car radio on and my car windows *Page 10 
closed. I do not know if the horn or whistle were blown or not. I just know that I did not hear it."
 {¶ 18} We note that the testimony of a witness that he or she either heard a train sound its whistle ("positive testimony") or did not hear a train sound its whistle ("negative testimony") prior to a collision is not probative unless the witness was in a position to know whether the whistle was sounded or actually hear the whistle being sounded.Litner, 118 Ohio App.3d at 842 citing Hicks v. Baltimore Ohio RR.Co. (1953), 160 Ohio St. 307, 116 N.E.2d 307, paragraph one of the syllabus.
 {¶ 19} Based on the foregoing we find that the evidence presented from witness Huffer as to whether the train sounded its horn prior to reaching the Thayer Road crossing, is at best inconclusive and does not create a genuine issue of fact material to a resolution of the case at bar. See Litner, 118 Ohio App.3d at 844, 694 N.E.2d at 145 citingMurphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138,140-41. However, we must still address the remaining allegations contained in Cari's assignments of error.
 {¶ 20} We note that Cari also specifically alleges that the trial court erred in granting summary judgment in favor of Appellees as genuine issues of material fact exist regarding whether Steven had any duty to yield to the oncoming train or breached his duty to look effectively for a train because, as alleged by Cari, the *Page 11 
train was not plainly visible. Additionally, Cari alleges that the train crew breached their duty to keep a proper lookout when approaching the crossing.
 {¶ 21} Our review of the record reveals that Cari testified at her deposition that Steven was very familiar with Thayer Road, that he had been on that road many times going to and from work (as both a driver and passenger), and that he was aware of the railroad tracks crossing North Thayer Road. Cari also testified that Steven's driver's license had been suspended and admitted that he was driving without a valid license on the night of the accident.
 {¶ 22} Huffer also testified at her deposition that she was very familiar with the Thayer Road railroad crossing at issue in this case and that she has driven over this crossing hundreds to thousands of times. Huffer testified that on the date of the accident she was traveling south on Thayer Road on her way home from church. Specifically, Huffer testified that as she was waiting in the church parking lot at the corner of Thayer and State Route 81 she noticed a vehicle (subsequently determined to be Steven's) pass by her. Huffer testified that she turned on to Thayer and followed Steven's vehicle as they both traveled south on Thayer. Huffer testified that she and Steven were traveling at approximately 45-50 miles per hour. Huffer testified that as she was following behind Steven she could hear his muffler as it was very loud, and could hear him "shifting gears" as he was driving. *Page 12 
 {¶ 23} Huffer testified that as she approached the railroad crossing she slowed down to see if a train was coming, and noticed the oncoming train's headlight. Huffer testified that the train was clearly visible and she could tell the train was yellow and blue. Huffer also testified that the "train was totally backlit so you could see the whole engine of the train as it came down the track." Additionally, in her affidavit, Huffer stated that as she approached the crossing her view of the train was not impeded by vegetation or any structures, that it was not a "humped" crossing, and that the crossing did not "have a profile that obstructs one's vision of oncoming trains." Huffer testified that she slowed down and stopped when she saw the train, but testified that Steven's car never slowed down and that Steven never applied the brakes before he was struck by the train. Huffer testified that she was approximately 10 car lengths behind Steven's vehicle when he was struck by the train.
 {¶ 24} Specifically regarding Cari's allegation that the train crew failed to keep a proper lookout, we note as follows:
 [i]t is the duty of a locomotive engineer to keep a lookout on the track ahead of the train. If while doing so his eye takes in a person approaching the track, he may assume that such person will keep away from the track until the train passes; but when it becomes evident that such person will not keep off the track, it becomes the duty of such engineer to use ordinary care to prevent injury to such person; his first and highest duty, however, being for the safety of the passengers and property of his charge for transportation. *Page 13 
Cates v. Consolidated Rail Corp. (1995), 100 Ohio App.3d 288 at 296
citing New York, Chicago St. Louis RR. Co. v. Kistler (1902),66 Ohio St. 326 at paragraph 6 of the syllabus. Additionally, it is not negligent for the engineer and brakeman for a railroad locomotive to assume that an automobile approaching the tracks will yield to the oncoming train. Id.
 {¶ 25} Moderwell testified at his deposition that there was nothing unusual about the Thayer Road crossing and there were no trees, bushes, or anything else present that would have interfered with his view of cars approaching the crossing. Moderwell testified that at the time of the accident the train was operating "long nose forward" which meant that the crew was sitting in the rear end of the locomotive as it traveled through the Thayer Road crossing. Moderwell testified that when the train is running long nose forward he sits on the left side of the train and his conductor (Sickles) sits on the right side.
 {¶ 26} Moderwell testified that he was operating the train with its headlight on bright and with the crossing bells on and the horn sounding properly prior to the accident. Moderwell also testified that he was operating the train at 20 miles per hour as they proceeded through the Thayer Road crossing and that as they got close to the crossing, Sickles said "`we're going to hit one' or something to that effect." Specifically, Moderwell stated in his affidavit as follows:
 Because I was seated on the left, or in this instance south side of the locomotive, I did not see Mr. Knoerzer's vehicle prior to *Page 14 impact. However, I applied the train's emergency brake immediately after my conductor, Mr. Sickles, let me know Mr. Knoerzer's vehicle was not going to stop. The emergency brake was applied at or about the time of impact.
 {¶ 27} Sickles testified at his deposition that one of his duties as conductor includes observing the track for signals of obstructions or anything ahead of the train which is what he was doing prior to the accident in the present case. Sickles testified that he observed Steven's car approaching the crossing and estimated Steven's speed at approximately 45 miles per hour. In his affidavit, Sickles stated that "[a]s soon as I realized Mr. Knoerzer was not going to stop, I informed the engineer of this and he applied the train's emergency brake immediately, this being at or about the time of impact."
 {¶ 28} Additionally, we note that Sickles believed that Steven would abide by the applicable laws and yield the right-of-way to the oncoming train. Specifically, in his affidavit Sickles stated as follows:
 As I approached the accident crossing going westbound, I was seated in my usual seat on the right, or in this instance the north side of the locomotive. Mr. Knoerzer approached the crossing from my right going from north to south. When I saw Mr. Knoerzer's vehicle, until just before impact, I believed Mr. Knoerzer would stop or yield to our oncoming train.
 {¶ 29} Finally, we note that Trooper Bowers testified in his deposition that although it was dark, the weather was clear on the night of the accident. Bowers testified that his investigation revealed that although the Thayer Road crossing *Page 15 
was an unlit intersection, at the time of the accident the train had two operating headlights. Bowers also testified that he did not consider the Thayer Road crossing to be an obstructed crossing such that Steven's view would have been obstructed as he approached it. Bowers testified that upon his investigation of the accident he determined that Steven had a duty to yield to the train, that Steven failed to do so, and that his failure to yield was the contributing circumstance to the accident.
 {¶ 30} Based on the foregoing and in viewing the evidence presented in a light most favorable to Cari as the non-moving party, we find that the record demonstrates as a matter of law that Steven's failure to look and stop his vehicle when approaching the Thayer Road crossing was the proximate cause of the collision as the train was clearly visible as it approached the crossing. See Cottrill v. Knaul, supra at ¶ 7 citingVagedes, 2005-Ohio-673 at ¶ 12 citing Mowery at *2; see alsoLitner, 118 Ohio App.3d at 844 citing Zuments, 27 Ohio St.2d at 72;Caudill v. Norfolk W. Ry. Co. (Feb. 6, 1995), Butler App. No. CA94-04-094, unreported, 1995 WL 42376; R.C. 4511.62(A)(1)(e). Accordingly, as there is no genuine issue as to any material fact that Steven failed to slow or stop as he approached the crossing and was thus struck by the train as he traveled across the crossing, we find that the trial court properly granted summary judgment in favor of the Appellees. *Page 16 
 {¶ 31} Therefore, Cari's two assignments of error are overruled and the October 16, 2007 Judgment Entry of the Allen County Court of Common Pleas granting summary judgment in favor of CSX, Moderwell, and Sickles is affirmed.
Judgment affirmed.
 PRESTON and ROGERS, JJ., concur. *Page 1