OPINION
{¶ 1} Todd Damron and Dennis Hensley, Lisa and Greg Baker and Sean Hale, and Michael Hale (collectively "Plaintiffs") appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to the City of Miamisburg ("the City") on their claims arising out of an automobile-train collision. For the following reasons, the trial court's judgment will be affirmed.
 I {¶ 2} At approximately 4:00 p.m. on January 5, 2004, teenagers Craig Hensley and Courtney Damron were riding with teenager Sean Hale in Hale's 1985 Ford Ranger pickup truck. The three were going to Hensley's house in Germantown, Ohio, when they decided to see how high the Great Miami River had flooded a local fishing spot in Miamisburg. Hale drove south on Riverview Avenue in Miamisburg toward Lower Miamisburg Road and then stopped at the four-way stop sign at the intersection of Riverview and Lower Miamisburg Road. Although Hale has no memory of the events after this, he apparently turned left (eastward) onto Lower Miamisburg Road. Shortly thereafter, Hale's truck was struck by a train operated by *Page 3 
CSX Transportation, Inc., at a railroad crossing just beyond the intersection. Damron and Hensley were killed in the collision. Hale was seriously injured.
 {¶ 3} The portion of Lower Miamisburg Road east of Riverview Avenue was a "one-lane gravel kind of road" that terminated at the Great Miami River, where a boat ramp was located. The road was also known as Scherrer's Lane, because the sole residence off of Lower Miamisburg Road east of the railroad tracks belongs to Robert Scherrer, who has lived there with his wife for 54 years.
 {¶ 4} According to Danny Clemmer, the Miamisburg Public Works Streets Supervisor between 1994 and 2005, the Lower Miamisburg Road railroad crossing had repeated problems with "liquefaction," where the water from a heavy rain would cause a "muddy, wet, soupy substance" to come up between the rails and deteriorate the support around the ties and the rails. Clemmer indicated that he would notify the engineering department, the City would notify the railroad, and the potholes would be repaired. Over time, the deterioration would reoccur, and the railroad would be notified again. When Clemmer received a complaint about the Lower Miamisburg Road crossing, he would investigate the complaint, bringing along a barricade. If Clemmer saw a hazard, he would place a barricade at the Riverview intersection.
 {¶ 5} On December 31, 2003, Robert Scherrer contacted the City of Miamisburg to complain about the condition of the Lower Miamisburg Road crossing. Clemmer believes that he was on vacation at the time, and William E. Monroe went to inspect the crossing that same day. Monroe observed that the inside rubber at the railroad crossing was missing and that there were large potholes. The same day, the City notified CSX of the problem. CSX did not repair the crossing prior to the accident. *Page 4 
 {¶ 6} At the time Monroe inspected the crossing, a portion of the riverbank area around Lower Miamisburg Road had flooded, and a portion of the road was covered by water. The flood waters did not reach the railroad crossing.
 II {¶ 7} Three separate actions were filed after the accident. Stated generally, the families and estates of Damron and Hensley jointly brought wrongful death and survivorship claims against CSX, the City, Hale, the Montgomery County Commissioners, and various insurers. Hale and his mother and step-father (the Bakers) brought personal injury and loss of consortium claims against CSX, the City, and the Montgomery County Commissioners. Hale's father brought a separate action for personal injury and loss of consortium against CSX, the City, and the Montgomery County Commissioners. CSX and the City brought claims against each other and Hale for indemnification and contribution. The actions were consolidated by the trial court.
 {¶ 8} In August 2007, each group of Plaintiffs moved for and received leave to file amended complaints. With regard to the City, Damron's and Hensley's "revised third amended complaint" alleged that the City "had employees who were responsible for reporting railroad crossing in need of repair to the railroad company" and that City employees were aware that the Lower Miamisburg Road crossing was in need of repair. They alleged that the City "had a duty to keep Lower Miamisburg Road in repair and to remove sight obstructions which existed and created a nuisance to drivers on the roadway" and that "city employees with wanton and reckless conduct failed to properly follow up to make sure that actual and/or constructively known hazards at the Lower Miamisburg railroad crossing were fixed in an appropriate amount of time and/or take reasonable steps necessary to protect the motoring public, including Plaintiffs' *Page 5 
decedents, from the foreseeable consequences of the actual and/or constructively known hazards at the Lower Miamisburg railroad crossing." In short, Damron and Hensley alleged that the City acted recklessly and wantonly by disregarding the potholes at the crossing.
 {¶ 9} Damron and Hensley had requested permission to include additional claims in their third amended complaint. The trial court, however, ruled that "Plaintiffs cannot amend the complaint to make allegations related to sight lines being obstructed by vegetation, nor should there be any reference to roadways being barricaded or closed due to flooding." The court reasoned that there was no prima facie showing that the vegetation or flooding had any relationship to the accident.
 {¶ 10} Sean Hale, the Bakers, and Michael Hale filed first amended complaints. Sean Hale's and the Bakers' complaint asserted that the City acted recklessly and wantonly with respect to maintenance, road disrepair, and obstructive vegetation hazards at the Lower Miamisburg Road crossing situated within the City's right-of-way. They further alleged that the City was liable for "failing to follow up and make sure" that hazards at the crossing were repaired in an appropriate amount of time and for failing to protect the motoring public. Michael Hale brought similar claims and specifically asserted that the City was liable for "failing to place a barricade."
 {¶ 11} On October 23, 2007, the City sought summary judgment on all of the claims against it. The City claimed that it had no duty to repair the crossing, that it was immune from vegetative obstruction claims, that there was no evidence that the City's actions or inactions caused the accident, and that the City did not act recklessly and wantonly. All of the Plaintiffs opposed the motion, arguing that the City had control over the railroad crossing and that it had a *Page 6 
duty to order CSX to repair and maintain the crossing. They further argued that the City had a duty to barricade the road for the safety of the public.
 {¶ 12} The trial court granted the City's motion for summary judgment. The court noted that the evidence indicated that the accident occurred within CSX's right of way, and it concluded that CSX, not the City, had a duty to repair the potholes and chuckholes in the right of way. The trial court thus found that the City was immune from liability. The court further found that Plaintiffs had not asserted a claim for negligent failure to remove water from the roadway and that, even if a claim had been asserted, Plaintiffs failed to demonstrate that there was a water obstruction where the accident occurred. The court concluded that Plaintiffs failed to show that the City was negligent in failing to place a barricade on the roadway prior to the crossing. As to the vegetative obstruction claim, the court concluded that Plaintiffs failed to create a genuine issue of material fact that vegetative obstructions were located on the City's right of way or that the failure to remove such an obstruction was a proximate cause of the accident.
 {¶ 13} At this juncture, the claims against CSX and Sean Hale remain pending.
 {¶ 14} Each group of Plaintiffs appeals from the trial court's grant of summary judgment to the City. Plaintiffs have filed a joint brief, raising five assignments of error. We will address them in an order that facilitates our analysis.
 III {¶ 15} Because Plaintiffs' second, third, and fourth assignments are related, they will be addressed together. They state:
 {¶ 16} "II. THE TRIAL COURT ERRED IN FINDING THAT *Page 7 
PLAINTIFFS/APPELLANTS HAD NOT ASSERTED A CLAIM AGAINST DEFENDANT/APPELLEE MIAMISBURG FOR NEGLIGENCE IN FAILING TO PLACE A BARRICADE ON THE ROADWAY BECAUSE OF FLOODING ON THE EAST SIDE OF THE CROSSING.
 {¶ 17} "III. THE TRIAL COURT ERRED IN FINDING THAT IF PLAINTIFFS/APPELLANTS HAD ASSERTED A NEGLIGENCE CLAIM WITH RESPECT TO THE FLOOD WATER THAT DEFENDANT/APPELLEE MIAMISBURG WAS ENTITLED TO SUMMARY JUDGMENT AS TO SUCH CLAIM.
 {¶ 18} "IV. IF PLAINTIFFS/APPELLANTS ARE HELD NOT TO HAVE ASSERTED A CLAIM AGAINST DEFENDANT/APPELLEE MIAMISBURG IN THEIR REVISED THIRD AMENDED COMPLAINT THEN THE TRIAL COURT ERRED IN DENYING THEM LEAVE TO SPECIFICALLY REFER TO ROADWAYS BEING BARRICADED OR CLOSED DUE TO FLOODING IN THAT COMPLAINT."
 {¶ 19} In Plaintiffs' second, third, and fourth assignments of error, Plaintiffs claim that the trial court erred in finding that Plaintiffs' complaints failed to state a claim against the City for failing to barricade Lower Miamisburg Road due to flooding or for failing to remove the flood water from the road. Alternatively, Damron and Hensley claim that the trial court should have granted them leave to state such a claim in their third amended complaint. Finally, Plaintiffs argue that the trial court erred when it concluded that the City would have been entitled to summary judgment on such a claim even if it had been properly pled.
 {¶ 20} Plaintiffs' claim based on the flood water uses the following logic: (1) the City had a duty to remove obstacles, such as the flood water, from Lower Miamisburg *Page 8 
Road; (2) because the City did not remove the flood water, it had a duty to barricade the road to prevent motorists from getting near the water; (3) Miamisburg failed to barricade the road; and (4) Damron, Hensley, and Hale drove on the road, resulting in an accident.
 {¶ 21} In finding that the City was entitled to summary judgment on a claim based on the flood water, the trial court found that Plaintiffs had failed to establish that an "obstruction" existed at the crossing where the accident occurred. The court indicated that Plaintiffs "have failed to cite any testimony or evidence that any flood water had covered the portion of the roadway immediately prior to, immediately after, or immediately on the railroad crossing. Further, Plaintiffs have failed to show that any alleged water on the roadway created a potential hazard for ordinary traffic on the public road. Therefore, the argument that Miamisburg was negligent in failing to place a barricade on the roadway prior to the crossing lacks merit."
 {¶ 22} In rejecting Damron's and Hensley's motion to amend their complaint and in granting summary judgment to the City on this claim, the trial court determined that there was no evidence that the flooding proximately caused the accident. We agree.
 {¶ 23} "For an act to be the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act." Titus v. Dayton Bd. of Edn. (Jan. 28, 2000), Montgomery App. No. 17920; Daniels v. Wilson, Montgomery App. Nos. 19403, 19421, 2003-Ohio-3399, at ¶ 15.
 {¶ 24} Here, Plaintiffs presented the affidavit of Michael Ekberg, Manager of Water Resource Monitoring for the Miami Conservancy District. Ekberg prepared inundation area maps for January 4, 2004, which showed the floodwaters along the *Page 9 
Great Miami River. Although the maps indicate that the river flooded a portion of the roadway east of the railroad crossing, the flood waters did not reach the crossing.
 {¶ 25} Frank Bell, a traffic signal repairman for the City, testified that the City had barricaded Lower Miamisburg Road in the past due to flooding issues. Bell indicated that the barricades, "more than likely," would be placed at the intersection of Riverview and Lower Miamisburg Roads.
 {¶ 26} Plaintiffs' expert, Dr. William Berg, a professional engineer, stated in his affidavit:
 {¶ 27} "The opportunity for the collision to occur would have been precluded had the City of Miamisburg met its standard of care by closing Lower Miamisburg Road at its intersection with South Riverview Avenue due to the flooding immediately east of the grade crossing. This traffic control measure should have been undertaken because there was no intervening, non-flooded property that required access, and it would have precluded motorists from having to stop at the flooded area and then turn around to go back to South Riverview Avenue. In addition, it would have prevented motorists from having to unnecessarily cross the railroad tracks two times and be exposed to the hazard of approaching trains. This was an important and necessary safety action that should have been implemented by the City of Miamisburg."
 {¶ 28} Dr. Berg opined that the City's failure to close Lower Miamisburg Road was a contributing cause of the accident.
 {¶ 29} Construing the evidence in the light most favorable to Plaintiffs, we find no genuine issue of material fact and conclude that the City's failure to barricade the road due to flooding did not proximately cause the accident. Although the evidence *Page 10 
establishes that the Great Miami River had flooded and that flood water covered some of Lower Miamisburg Road east of the railroad crossing, Plaintiffs presented no evidence that the flooding prevented Hale from driving over the crossing or that flood water caused the accident.
 {¶ 30} It is axiomatic that no collision would have occurred if the road were closed, assuming that drivers obeyed the barricade. Nevertheless, without evidence that the flood waters contributed to the accident, we find no proximate cause, as a matter of law, due to the City's failure to barricade the road due to the flooding. Accordingly, the trial court did not err in concluding that the City would have been entitled to summary judgment had the complaints included a claim based on failing to barricade due to the flooding. Any error by the trial court in failing to permit Damron and Hensley to amend their complaint to include such a claim or in construing Plaintiffs' complaints as not raising such a claim was harmless.
 {¶ 31} The second, third, and fourth assignments of error are overruled.
 IV {¶ 32} Plaintiffs' first assignment of error states:
 {¶ 33} "I. THE TRIAL COURT ERRED IN FINDING THE CITY OF MIAMISBURG IMMUNE AS TO THE FAILURE TO BARRICADE LOWER MIAMISBURG ROAD UNTIL DEFENDANT CSX REPAIRED THE POTHOLES/CHUCKHOLES."
 {¶ 34} In their first assignment of error, Plaintiffs claim that the trial court erred in concluding that the City was immune from liability for failing to barricade Lower Miamisburg Road until CSX repaired the crossing. Plaintiffs assert that, given the *Page 11 
City's knowledge of the potholes, the City had no choice but to barricade Lower Miamisburg Road; they argue that no discretion was involved. Stated differently, Plaintiffs claim that the City was aware of CSX's alleged breach of their duty to maintain and repair its right of way and that the City should have acted to protect the public from any injury that could result from CSX's failure to maintain the crossing. (We note that Plaintiffs' brief appears to argue that the City also had a duty to repair the road. Plaintiffs' reply brief clarifies that they contend only that the City had a duty to barricade the road, not repair it.)
 {¶ 35} The Political Subdivision Tort Liability Act requires a three-tiered analysis to determine whether a political subdivision should be immune from liability. Pursuant to R.C. 2744.02(A)(1), the general rule is that political subdivisions are not liable in damages when performing either a governmental or a proprietary function.Hubbard v. Canton City Bd. of Edn., 97 Ohio St.3d 451, 2002-Ohio-6718,780 N.E.2d 543. Once immunity is established, the second tier of the analysis is whether one of the exceptions to immunity set forth at R.C. 2744.02(B)(1)-(5) applies. Third, immunity can be reinstated if the political subdivision can successfully show that one of the defenses contained in R.C. 2744.03 applies.
 {¶ 36} Plaintiffs argue on appeal that the City is not immune from liability under R.C. 2744.02(B)(3), which renders a political subdivision liable for "injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads." No other exception to immunity is implicated in this case. See R.C. 2744.02(B)(1), (3)-(5).
 {¶ 37} Relying upon R.C. 2744.02(B)(3), R.C. 4955.20, and R.C. 723.01, *Page 12 
Plaintiffs assert that the Lower Miamisburg Road is a public road and that the railroad crossing falls under the City's control.
 {¶ 38} For purposes of R.C. Chapter 2744, the term "public roads" means "public roads, highways, streets, avenues, alleys, and bridges within a political subdivision." R.C. 2744.01. The term does not include berms, shoulders, rights-of-way, or traffic control devices unless the devices are mandated by the Ohio manual of uniform traffic control devices. (Emphasis ours). Id.
 {¶ 39} R.C. 723.01 provides:
 {¶ 40} "Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation. The liability or immunity from liability of a municipal corporation for injury, death, or loss to person or property allegedly caused by a failure to perform the responsibilities imposed by this section shall be determined pursuant to divisions (A) and (B)(3) of section 2744.02 of the Revised Code."
 {¶ 41} R.C. 4955.20 addresses the construction, maintenance and repair of railroad crossings. Under that statute, railroad companies are required to "build and keep in repair good and sufficient crossings over or approaches to such railroad, its tracks, sidetracks, and switches, at all points where any public highway, street, lane, avenue, alley, road, or pike is intersected by such railroad, its tracks, sidetracks, or switches. Such companies shall build and keep in repair good and sufficient sidewalks *Page 13 
on both sides of streets intersected by their railroads, the full width of the right of way owned, claimed, or occupied by them." R.C. 4955.20
gives municipal corporations the authority "to fix, and determine the kind and extent, and the time and manner of constructing, crossings and approaches" within the municipality. The board of township trustees has similar authority for crossings outside of municipalities. "Such crossings, approaches, and sidewalks shall be constructed, repaired, and maintained by the railroad companies as so ordered." Id.
 {¶ 42} The trial court also cited R.C. 5561.16, which requires a railroad company to "construct, reconstruct, improve, maintain, and repair" crossings at the company's expense.
 {¶ 43} Reading R.C. 723.01, R.C. 2744.02(B)(3), and R.C. 4955.20
together, we disagree with Plaintiffs that the statutes create a duty upon the political subdivision to close a road due to disrepair or obstructions on property outside of the "public road." Although R.C. 723.01 grants the City broad authority to regulate streets, that statute refers to R.C. 2744.02 to determine the City's duties. As stated above, R.C. 2744.02(B)(3) limits the duty to repairing the road and removing obstructions. Because R.C. 2744.01 excludes rights-of-way from the definition of a public road, the railroad crossing does not fall within the City's duties.
 {¶ 44} Consistent with this approach, R.C. 4955.20 requires railroad companies — not governmental entities — to maintain and repair crossings where any public roadway intersects the railroad tracks. R.C. 4955.20;Wooten v. CSX R.R., 164 Ohio App.3d 428, 2005-Ohio-6252, 842 N.E.2d 603, at ¶ 30, quoting Lintner v. Norfolk W. Ry. Co. (1997),118 Ohio App.3d 838, 841, 694 N.E.2d 140. Although R.C. 4955.20 *Page 14 
states that the governing body of a municipal corporation and a board of township trustees have the power "to fix" crossings and approaches, it is apparent that the statute is referring to the authority to set the location of new crossings and approaches, not to repair the crossing. See City of Springfield v. CSX Ry. Corp., 68 Ohio St.3d 371,1994-Ohio-441, 627 N.E.2d 534 (stating that R.C. 4955.20 gives municipalities the authority to determine the kind of crossing within its borders). The legislature has consistently used the term "to repair" where that duty was imposed. See, e.g., R.C. 4955.20, R.C. 4955.46, R.C. 5501.49(A), R.C. 5561.16. When a municipality becomes aware of a needed repair, the municipality has the authority to require such repairs to be made by the railroad company, R.C. 4955.20, and, if properly notified, the company must make the repairs within 30 days, R.C. 4955.21. In short, R.C. 4955.20 indicates that the repair of a railroad crossing that intersects a municipal road is the responsibility of the railroad company, not the municipality.
 {¶ 45} In the Supreme Court of Ohio's recent opinion in Howard v.Miami Twp. Fire Div., 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 311, the supreme court interpreted R.C. 2744.02(B)(3) in the context of a governmental entity's obligation to remove obstructions from public roads. Noting the General Assembly had removed language that required governmental entities to keep roads "free from nuisance," the supreme court concluded that this legislative deletion "was not whimsy but a deliberate effort to limit political subdivisions' liability for injuries and deaths on their roadways." Id. at ¶ 26. The court noted that prior to the legislature's passing Am. Sub. H.B. No. 350, it had interpreted former R.C. 2744.02(B)(3)'s use of the term "nuisance" to include "conditions that directly jeopardize the safety of traffic on the highway" even if they did *Page 15 
not appear on the roadway itself. Id. at ¶ 27, citing,Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm. (1992),63 Ohio St.3d 318, 322-323, 587 N.E.2d 819. The supreme court deduced: "The General Assembly, in furtherance of its goal, used the word `obstructions' in a deliberate effort to impose a condition more demanding than a showing of a `nuisance' in order for a plaintiff to establish an exception to immunity." Id. at ¶ 29. The court thus concluded that, under R.C. 2744.02(B)(3), "an `obstruction" must be an obstacle that blocks or clogs the roadway and not merely a thing or condition that hinders or impedes the use of the roadway or that may have the potential to do so."
 {¶ 46} Although Howard did not address a duty to barricade pending repairs, it is apparent from the holding in Howard that the City does not have an overarching duty under R.C. 723.01 and R.C. 2744.02(B)(3) to ensure the safety of the motoring public. Because R.C. 2744.02(B)(3) did not impose a duty on the City to repair or remove obstructions from the crossing, the City had no legal duty to barricade the road pending repairs by the railroad company. Although the City, commendably, has erected barricades in the past, there is no exception to immunity under R.C. 2744.02(B) for its failure to do so in this instance.
 {¶ 47} Even assuming that the City could be liable under R.C. 2744.02(B)(3), the City would have been entitled to immunity under R.C. 2744.03(A)(5). R.C. 2744.03(A)(5) reinstates immunity when the injury "resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." *Page 16 
 {¶ 48} Plaintiffs assert that the abatement of potholes does not involve discretion or judgment and, thus, the City is not immune from liability under R.C. 2744.03(A). Plaintiffs cite to Franks v. Lopez
(1994), 69 Ohio St.3d 345, 632 N.E.2d 502, in which the supreme court reviewed various claims that political subdivisions failed to keep a road "clear from nuisance" under the former version of R.C. 2744.02(B)(3). After concluding that the failure to maintain existing signage may constitute a nuisance, the Court noted that the political subdivisions must have actual or constructive notice of the nuisance before liability may be imposed. Id. at 349. Concerning this claim, the supreme court stated: "Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so." Id.
 {¶ 49} In light of the 2003 changes to R.C. 2744.02(B)(3), which eliminated the requirement to keep roads "free from nuisance," we findFranks to be of limited value in this case. Moreover, Franks referred to potholes that the political subdivision had a duty to repair; in this case, that duty fell upon the railroad.
 {¶ 50} Construing the facts in the light most favorable to Plaintiffs, we find no evidence to support the conclusion that the City or its employees acted recklessly or wantonly. The evidence establishes that on December 31, 2003, the City received a complaint from Scherrer regarding the condition of the Lower Miamisburg Road crossing. That day, Monroe went to inspect the crossing, and he observed that the *Page 17 
inside rubber at the rail crossing was missing and that there were large potholes.
 {¶ 51} There are differences of opinion whether the potholes constituted a hazard to motorists. Monroe stated that he did not consider the defects at the crossing to be a hazard. He indicated that he drove across the railroad tracks and had no trouble driving across. Scherrer likewise testified that, at the time of the accident, the potholes were not so bad that the crossing could not be used, and he did not think that the potholes were bad enough that the City should have put up a barricade. In contrast, upon looking at a photograph of the crossing at the time of the accident, Clemmer stated that the crossing looked dangerous and needed "to be turned in" for repairs.
 {¶ 52} Monroe did not place a barricade to prevent access to Lower Miamisburg Road. However, he wrote an inspection report identifying the defective conditions on the crossing. CSX was contacted by the City at 3:30 p.m. on the same day.
 {¶ 53} Even assuming that the potholes created a hazard, we conclude that Monroe's decision not to place a barricade at the intersection of Riverview and Lower Miamisburg Roads does not render the City liable. The City promptly investigated Scherrer's complaint and promptly notified CSX — the entity responsible for the repairs — of the situation. Monroe's decision not to place a barricade was an exercise of his discretion. We find no evidence that Monroe acted recklessly, wantonly, or in bad faith in addressing the condition of the crossing.
 {¶ 54} The first assignment of error is overruled.
 V {¶ 55} Plaintiffs' fifth assignment of error states: *Page 18 
 {¶ 56} "V. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANT/APPELLEE MIAMISBURG DID NOT BREACH ANY DUTY TO PLAINTIFFS."
 {¶ 57} In their fifth assignment of error, Plaintiffs again assert that the City had duties under Ohio law to barricade the road and to repair the pothole, and that the City's breach of these duties proximately caused the accident. These general arguments have previously been addressed. For the reasons set forth, supra, the fifth assignment of error is overruled.
 VI {¶ 58} Having overruled each of the assignments of error, the judgment of the trial court will be affirmed.
FAIN, J. and WALTERS, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Daniel F. Getty
Robert M. Anspach
Mark R. Baran
Donald J. Kral
John A. Smalley
Nicholas E. Subashi
Anne P. Keeton
Richard M. Hunt
Christopher W. Carrigg
Margaret R. Young
 Hon. Timothy N. O'Connell *Page 1